[Cite as *State v. Miller*, 2018-Ohio-3481.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| STATE OF OHIO | JUDGES: |
| | Hon. John W. Wise, P. J. |
| Plaintiff-Appellee | Hon. W. Scott Gwin, J. |
| | Hon. Craig R. Baldwin, J. |
| -vs- | |
| | Case No. 17 CAA 08 0062 |
| SHAWN M. MILLER | |
| | |
| Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDING:          Criminal Appeal from the Court of Common
                                 Pleas, Case No.  16 CR I 09 0438


JUDGMENT:                        Affirmed in Part and Reversed in Part


DATE OF JUDGMENT ENTRY:          August 28, 2018


APPEARANCES:

For Plaintiff-Appellee               For Defendant-Appellant

CAROL HAMILTON O'BRIEN               CRAIG M. JAQUITH
PROSECUTING ATTORNEY                 ASSISTANT PUBLIC DEFENDER
DOUGLAS N. DUMOLT                     250 East Broad Street
ASSISTANT PROSECUTOR                 Suite 1400
140 N. Sandusky Street, 3rd Floor    Columbus, Ohio  43215
Delaware, Ohio  43015

*Wise, P. J.*

{¶1}   Defendant-Appellant Shawn M. Miller appeals his conviction on two counts of rape entered in the Delaware County Common Pleas Court following a jury trial.

{¶2}   Plaintiff-Appellee State of Ohio has also filed a cross-appeal in this matter.

## STATEMENT OF THE CASE

{¶3}   On Sunday, August 28, 2016, twelve-year-old T.A. resided at 135 Ross St. in Delaware, Ohio, with her grandmother Dolly Broyles-Miller, step-grandfather Shawn Miller, her brother J.A., and several other family members. (T. at 871-872). J.A. testified that Sunday afternoon, T.A. approached him on the bike path behind their home. (T. at 875). He explained T.A. was acting "nervous," "jittery," "upset," "shaking," and kept looking back at the house. (T. at 876-879). He explained that he could tell something was bothering her and had not seen her like this before. (T. at 876). T.A. then asked her younger brother to leave so she could speak privately with J.A. (T. at 878).

{¶4}   Once her younger brother was out of earshot, T.A. explained to J.A. that earlier in the day Miller had asked T.A. to go into his bedroom. While inside the room, Miller held her down and pulled her pants off. Miller then went into the bathroom and retrieved white cream that he rubbed on T.A.'s private parts and licked it off. (T. at 880). J.A. explained that T.A.'s statements made him angry. This prompted them to run away in an effort to go find their mother, who resided elsewhere in Delaware. (T. at 884-885). The children eventually located their mother in the parking lot of a gas station in Delaware. (T. at 887). At that time, T.A. informed her mother Miller had sexually abused her. T.A.'s mother departed and reported this information to the Delaware Police Department.

{¶5}    Detective Michael Bolen of the Delaware Police Department was assigned to investigate the allegations. (T. at 1085). Det. Bolen made contact with T.A. and J.A. at 135 Ross St. He asked T.A. to speak with him in an area that would afford them more privacy than inside the home. (T. at 1090). During a brief series of questions near the bike path, T.A. became visibility upset. T.A. stood before him silent, covered her face with her hands, and began to silently weep. (T. at 1092). At that point T.A. informed Det. Bolen that Miller had hurt her by touching her privates. (T. at 1093). T.A. stated Miller touched both the inside and outside of her private. T.A. also stated that Miller had put his private inside of her private. Finally, T.A. stated all of this conduct occurred earlier in the day. (T. at 1093-1094).

{¶6}    After speaking with T.A. and J.A,, Det. Bolen arrested Miller and continued his investigation.

{¶7}    On September 7, 2016, Appellee was indicted for allegedly committing ten sexually oriented offenses against T.A. (Jane Doe 1), M.B (Jane Doe 2), and J.B. (John Doe).

{¶8}    On February 1, 2017, the matter proceeded to trial for the first time. On February 9, 2017 the jury returned not guilty verdicts on two counts of gross sexual imposition relating to T.A. and all of the counts relating to M.B. The jury was unable to reach verdicts on the remaining counts.

{¶9}    On April 18, 2017, the matter proceeded to trial for the second time on the remaining four counts. On May 2, 2017, the jury returned not guilty verdicts on the two counts relating to J.B., but was again unable to reach a verdict on the two counts alleging

Appellee raped T.A. A mistrial was again declared on Counts 1 and 2, and those counts were again tried on July 11, 2017.

{¶10} In the first trial, T.A. testified to a detailed account of the sexual abuse. However, in the third trial, T.A. became visibly upset during her testimony. Although T.A. would answer some questions unrelated to her abuse, when questioned about the abuse she cried silently to herself. (T. at 977-1005). After a persistent refusal to answer Appellee's questions, the court instructed T.A. that she should answer the questions. (T. at 950). When T.A. continued to sit silent while Appellee questioned T.A. regarding the sexual abuse, the trial was recessed for the day. The next morning T.A. continued to remain silent when questioned about the sexual abuse. This led the court to directly order T.A. to answer Appellant's questions. (T. at 1003). When T.A. continued to sit silent during questioning, the court found T.A. unavailable as a witness pursuant to Evid.R. 804(A)(2). (T. at 977-979, 1006). Accordingly, a portion of T.A.'s testimony from the first trial was read to the jury. *See* T. at 1006-1008.

{¶11} T.A. testified that on the afternoon of August 28, 2016, Shawn Miller sexually abused her. T.A. (T. at 15). She explained that Miller had called her back into her bedroom; he closed and locked the door behind her. T.A. (T. at 16). T.A. testified she was scared and that Miller locking the door was not a "good sign." T.A. (T. at 17). T.A. then testified that Miller removed her pants, held her down, and proceeded to "do it." T.A. (T. at 18). After explaining what her private parts are called to the jury, T.A. testified Miller retrieved an unknown white substance from the bathroom and licked it off of her vagina. T.A. (T. at 19). T.A. then testified Miller tried to put his penis in her private part. T.A. (T. at 20:11-25. T.A. further testified that Miller took his finger and tried to stick it into her

vagina. T.A. (T. at 21). The assault ended when T.A. yelled and her aunt knocked on the door to Miller's bedroom. T.A. (T. at 22).

{¶12} During the third trial, after the State rested its case but prior to Appellee's motion for acquittal pursuant to Crim. R. 29, the court conducted a *sua sponte* inquiry into the conduct Appellant alleged was encompassed by each count of the indictment. (T. at 1295).

{¶13} The State explained the conduct supporting count one was vaginal penetration of T.A. by any body part of Miller (either his penis or his finger). (T. at 1295). The State explained the conduct supporting count two was cunnilingus performed on T.A. by Miller. (T. at 1299).

{¶14} The court expressed skepticism that the State could allege count one encompassed multiple acts of sexual conduct and required it to elect which sexual act constituted the conduct underlying count one. The State informed the court, if forced to choose, it would proceed only on digital penetration. The court later explained that Miller's penetration of T.A.'s vagina with his penis was no longer "at issue in this case." (T. at 1303). The jury was ultimately instructed, and the State was required to argue, that the only sexual conduct supporting count one was Miller's insertion of a finger into T.A.'s vagina. (T. at 1643).

{¶15} After its colloquy with the State, the court addressed Miller's motion for acquittal pursuant to Crim.R. 29. The court denied Miller's motion and recessed the trial for the weekend.

{¶16} Before Miller commenced his case the following Monday, the court went on the record and offered a number of statements in defense of its decision limiting count

one of the indictment to the allegation of digital penetration. (T. at 1322-1328). The court explained it did not "think it would be fair" to Miller to allow the State to argue multiple modes of sexual conduct with respect to count one. (T. at 1326). The court explained that because "this is a two count rape case, not a three count rape case ... I think it only fair and right that the prosecution be compelled to specify which two rape allegations it will be asking the jury to vote on." (T. at 1328). The court stated it considered the matter "settled." (T. at 1326). After the State clarified that the court's ruling would not preclude it from referencing the now uncharged conduct during closing argument, Miller presented his case. (T. at 1328).

{¶17} The jury was ultimately instructed that, as it pertained to count one, sexual conduct was "the insertion -however slight- of a finger into the vaginal or anal opening of another person without privilege to do so." (T. at 1643). With respect to count two of the indictment, the jury was instructed that sexual conduct was "cunnilingus between persons regardless of their gender." (T. at 1648). After the completion of instructions and deliberations, the jury found Appellee guilty on both counts with the additional findings set forth in the indictment. The jury further found Miller compelled T.A. to submit by force or threat of force.

{¶18} On July 27, 2017, the court sentenced Miller to an indefinite term of imprisonment of twenty-five (25) years to life on each count. After making the requisite findings, the court ordered those sentences to be served consecutively.

{¶19} Both parties now appeal, assigning the following errors for review:

ASSIGNMENTS OF ERROR

**{¶20}** "I. MR. MILLER'S TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL, IN VIOLATION OF HIS CONSTITUTIONAL RIGHTS. SIXTH AND FOURTEENTH AMENDMENTS, UNITED STATES CONSTITUTION; ARTICLE I, SECTIONS 10 AND 16, OHIO CONSTITUTION; *STRICKLAND V. WASHINGTON*, 466 U.S. 668, 104 S.CT. 2052, 80 L.ED.2D 674 (1984).

**{¶21}** "II. APPELLANT'S CONVICTIONS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, IN VIOLATION OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION. *STATE V. THOMPKINS*, 78 OHIO ST.3D 380, 387, 678 N.E.2D 541 (1997)."

CROSS-APPEAL

**{¶22}** "I. THE TRIAL COURT ERRED WHEN IT DISMISSED THE PORTION OF COUNT ONE ALLEGING APPELLEE ENGAGING IN VAGINAL INTERCOURSE WITH T.A.

"A. DOES CRIM. R. 7(B) PERMIT THE STATE TO INDICT A DEFENDANT FOR MULTIPLE ACTS OF SEXUAL CONDUCT IN A SINGLE COUNT OF AN INDICTMENT?

"B. DOES R.C. 2941.28 PRECLUDE A TRIAL COURT FROM DISMISSING "DUPLICITOUS" PORTIONS OF AN INDICTMENT?"

**I.**

**{¶23}** In his first assignment of error, Appellant argues that he was denied the effective assistance of counsel. We disagree.

**{¶24}** A claim of ineffective assistance of counsel requires a two-prong analysis. The first inquiry is whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. *Lockhart v. Fretwell,* 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993); *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley,* 42 Ohio St.3d 136, 538 N.E.2d 373 (1989).

**{¶25}** Counsel is unconstitutionally ineffective if his performance is both deficient, meaning his errors are "so serious" that he no longer functions as "counsel," and prejudicial, meaning his errors deprive the defendant of a fair trial. *Maryland v. Kulbicki,* 577 U.S. ——, 2015 WL 5774453 (Oct. 5, 2015) (citing *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984))

**{¶26}** Here, Appellant argues that his counsel was ineffective for failing to object to statements made by Candell Looman and Detective Bolen with regard to T.A.'s credibility.

**{¶27}** Specifically, Appellant takes issue with the following statements made by Ms. Looman on direct examination:

Q: So you've seen children who have been through a lot over the years?

A: Absolutely.

Q: And you've had an opportunity to observe their behaviors and demeanors and things like that?

A: Yes.

Q: Were some of the observations you made of [T.A.] at that point concerning to you?

A: Yes.

Q: Did those observations influence your treatment recommendations and your, that you provided in this case?

A: Yeah. I referred [T.A.] to The Center for Family Safety and Healing to their family support program. It's a program that is trauma focused but it specifically works with children who have been sexually abused.

(T. at 356).

Q: As part of your work on the treatment team, you mentioned something about the Nationwide Family Support Program, why do you order that? Why did you think that was medically appropriate to recommend it I should say?

A: Based on the, my observations of how [T.A.] was interacting with our interviewer, along with the simple fact that she didn't have family present, we, I felt and in corresponding with the team that she, she really needed a trauma focused counseling that can specialize in sexual abuse, so the best program that I know of is there at The Center for Family Safety and Healing.

Q: Do you order that in every case?

A: No.

(T. at 360).

**{¶28}** Appellant argues that these statements amounted to Ms. Looman telling the jury that she believed T.A.'s allegations that she was sexually abused.

**{¶29}** Appellant's trial counsel cross-examined Ms. Looman on this issue:

Q:  Your opinions yesterday about [T.A.'s] body language, you said that you've had just a class or two in child psychology?

A. I don't know how many classes I have had.

Q: Okay. But certainly not enough to make yourself an expert on body language interpretation or anything like that?

A: I would not say I'm an expert, no.

Q: So really those are, what you talked about yesterday were just kind of your thoughts on what you thought [T.A.] might be experiencing?

A: It would be my, my, the training that I have as well as the years of experience I've had working with children.

Q: You're also basing that on a key assumption that [T.A.'s] allegations are true, correct?

A: No.

\*\*\*

A:  I don't – it's not my job to determine if she is telling the truth or not.

Q: And you don't have any personal knowledge one way or the other, correct?

A: Correct.

\*\*\*

Q: And, in fact, your training specifically says you're not supposed to make that determination, right?

A: No, it is not our job.

Q: Not only not your job but you're specifically not supposed to make that determination.

A: I'm sorry, I guess I'm confused by your question

Q: Your training says that you are not supposed to make any conclusion about the truth or veracity of the child's statements?

A: Correct, that is not our job.

Q: But you're basing your conclusions on that assumption, that assumption that she's being truthful, aren't you?

A: I would not say I'm basing my conclusions based on an assumption of the truth.

(T. at 431-433).

{¶30} On re-direct, Ms. Looman went on to explain:

Q: You said you weren't basing it on an assumption that she was telling the truth. Did you see things, based upon, that were consistent with your training and experience that would suggest that she had experienced some sort of trauma?

A: Yes.

Q: You can't say obviously what type of trauma that was, fair enough?

A: No.

Q: But the things you testified about yesterday regarding demeanor, behavior, which lead to your medical referral or medical, I guess referral to the, for sexual abuse counseling, those are the types of things that you were looking at to make that determination?

A: Absolutely. (T. at 433).

**{¶31}** An expert may not testify as to the expert's opinion of the veracity of the statements of a child declarant. *State v. Boston*, 46 Ohio St.3d 108, 545 N.E.2d 1220 (1989). However, an expert may provide testimony that bolsters or supports "the truth of the facts testified to by the child, or which assists the fact finder in assessing the child's veracity." *State v. Stowers*, 81 Ohio St.3d 260, 262–263, 690 N.E.2d 881 (1998).

**{¶32}** Here, on cross-examination, Ms. Looman repeatedly denied that she was making any assumption as to the truth of T.A.'s allegations. Rather, she explained to the jury that certain observations of T.A.'s behavior were consistent with the experience of some sort of trauma. (T. at 433). Ms. Looman stated she could not say what type of trauma T.A. experienced which resulted in her exhibiting the non-specific symptoms of trauma she observed. (T. at 433). Ms. Looman properly testified as to her observations and the treatments she recommended based on those observations. At no time during her testimony did she express an opinion that T.A. was telling the truth or comment on her credibility or veracity.

**{¶33}** Based on the above, we do not find counsel ineffective for making the strategic decision to reveal possible bias of the witness on cross-examination. Tactical or strategic trial decisions, even if ultimately unsuccessful, do not generally constitute ineffective assistance. *State v. Carter*, 72 Ohio St.3d 545, 558, 651 N.E.2d 965 (1995).

{¶34} Appellant also argues that counsel was ineffective in allowing the jury to hear parts of Detective Bolen's interview with Appellant. Appellant argues that counsel should have objected and requested redactions as to two portions of the interview. The first is where Det. Bolen told Appellant that he believed "something happened" and later when Det. Bolen told Appellant that he did not want to call him a liar but that he did not believe Appellant was being truthful.

{¶35} Appellant argues that his counsel was ineffective because rather than object, counsel drew the jury's attention to Det. Bolen's opinion regarding Appellant's untruthfulness:

> Counsel: He knows at that moment – and I think it's a significant moment too because it's the moment that it becomes real obvious to Shawn that you don't believe him, you're not going to believe him, and he's not going to convince you otherwise because you already made your mind up, didn't you, detective? (T. at 1251).

{¶36} Upon review, we find that Det. Bolen admitted in his testimony that he used standard deceptive techniques during the interview, such as lying, exaggerating and/or minimizing the seriousness of the allegations. (Tr. 1231-1236, 1239-1241). We find that such admissions lessen any potential prejudicial effect of the statements. It also shows that the statements were not provided to prove the truth of the matter asserted; but rather, to show Appellant's response to the officer's allegations.

{¶37} We further find that trial counsel's decision to draw the jury's attention to those portions of Appellant's interview with police could also be a trial tactic used so that the defense could establish bias or loss of objectivity.

**{¶38}** Based on the foregoing, we do not find that Appellant's counsel was ineffective in his representation of Appellant at trial.

**{¶39}** Appellant's first assignment of error is overruled.

**II.**

**{¶40}** In his second assignment of error, Appellant argues that his convictions were against the manifest weight of the evidence. We disagree.

**{¶41}** On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). *See also, State v. Thompkins*, 78 Ohio St.3d 380, 1997–Ohio–52, 678 N.E.2d 541. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Martin* at 175.

**{¶42}** We note the weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230, 237 N.E.2d 212 (1967). The trier of fact "has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." *Davis v. Flickinger*, 77 Ohio St.3d 415, 418, 1997–Ohio–260, 674 N.E.2d 1159.

**{¶43}** In the case *sub judice*, Appellant was convicted of two counts of Rape of a person who is less than thirteen years old, in violation of R.C. 2907.02, which provides,

(A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies:

* * *

(b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person.

**{¶44}** "Sexual conduct" is defined to include "vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal cavity of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse." R.C. 2907.01(A).

**{¶45}** In the case at bar, the jury heard all of the witnesses, including the victims and the investigating officer, viewed all of the evidence, including the medical evidence, and heard Appellant's attorney's arguments. The jury was able to see and hear T.A. and J.A. during their testimony. Thus, a rational basis exists in the record for the jury's decision.

*{¶46}* The jury as the trier of fact was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. "While the trier of fact may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence." *State v. Craig*, 10th Dist. Franklin No. 99AP–739, 1999 WL

29752 (Mar 23, 2000) *citing State v. Nivens*, 10th Dist. Franklin No. 95APA09–1236, 1996 WL 284714 (May 28, 1996). Indeed, the trier of fact need not believe all of a witness' testimony, but may accept only portions of it as true. *State v. Raver*, 10th Dist. Franklin No. 02AP–604, 2003–Ohio–958, ¶ 21, *citing State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964); *State v. Burke*, 10th Dist. Franklin No. 02AP–1238, 2003–Ohio–2889, *citing State v. Caldwell*, 79 Ohio App.3d 667, 607 N.E.2d 1096 (4th Dist. 1992). Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. *State v. Jenks*, 61 Ohio St.3d 259, 272, 574 N.E.2d 492 (1991), paragraph one of the syllabus*,* superseded by State constitutional amendment on other grounds as stated in *State v. Smith*, 80 Ohio St.3d 89, 102 at n. 4, 684 N.E.2d 668 (1997)*.*

**{¶47}** We find that this is not an " 'exceptional case in which the evidence weighs heavily against the conviction.' " *State v. Thompkins*, 78 Ohio St.3d 380, 386–387, 678 N.E.2d 541 (1997), *quoting Martin*, 20 Ohio App.3d at 175, 485 N.E.2d 717. The jury neither lost his way nor created a miscarriage of justice in convicting Appellant of rape of a person less than thirteen years of age.

**{¶48}** Based upon the foregoing and the entire record in this matter, we find Appellant's conviction on two counts of rape of a person less than thirteen years of age is not against the manifest weight of the evidence. To the contrary, the jury appears to have fairly and impartially decided that matter. The jury heard the witnesses, evaluated the evidence, and was convinced of Appellant's guilt.

**{¶49}** The jury was free to accept or reject any and all of the evidence offered by the parties and assess the witnesses' credibility. "While the jury may take note of the

inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence." *State v. McGregor,* 5th Dist. Ashland No. 15–COA–023, 2016–Ohio–3082, 2016 WL 2942992, ¶ 10, citing *State v. Craig,* 10th Dist. Franklin No. 99AP–739, 2000 WL 297252 (Mar. 23, 2000). Indeed, the jurors need not believe all of a witness' testimony, but may accept only portions of it as true. *Id.* Our review of the entire record reveals no significant inconsistencies or other conflicts in the State's evidence which would demonstrate a lack of credibility of the witnesses sufficient to find the jury lost its way to finding Appellant guilty.

**{¶50}** Based on the foregoing, together with all of the evidence presented, we find that the jury did not lose its way in finding Appellant guilty beyond a reasonable doubt.

**{¶51}** Appellant's second assignment of error is overruled.

### Cross-Appeal

**{¶52}** In its sole-assignment of error, Cross-Appellant argues the trial court erred in dismissing a portion of count one. We agree.

**{¶53}** In the case *sub judice*, the trial court, *sua sponte*, at the close of the State's case, required the State to specify which specific act of sexual conduct it would be proceeding on under count one in the indictment. The court required the State to choose between digital or penile penetration.

**{¶54}** While the trial court did not use the term, it appears it found that count one was duplicitous.

**{¶55}** "Duplicity in an indictment is the joinder of two or more separate offenses in a single count." *State v. Abuhilwa*, 9th Dist. Summit No. 16787, 1995 WL 134746, *5,

1995 Ohio App. LEXIS 1260, *14 (Mar. 29, 1995). "The prohibition against duplicity is geared to protect the accused's Sixth Amendment right to notice of the nature of the charge against him and prevent confusion as to the basis of the verdict." *State v. Smith*, 9th Dist. Summit No. 8869, 1978 WL 215411, 1978 Ohio App. LEXIS 8415 (Oct. 4, 1978); *see generally Cooksey v. State*, 359 Md. 1, 752 A.2d 606, 609–618 (Md.App.2000). The fact that an indictment is duplicitous, however, does not compel its dismissal. R.C. 2941.28(B). "Instead, the trial court may sever the indictment into separate indictments or separate counts." *State v. Ward*, 9th Dist. Lorain No. 09CA009720, 2011-Ohio-518, ¶ 5. Alternatively, the court may give an instruction on unanimity to the jury. *State v. Johnson*, 46 Ohio St.3d 96, 104–105, 545 N.E.2d 636 (1989); *State v. Miller*, 9th Dist. Lorain Nos. 10CA009922, 2012-Ohio-1263, ¶ 26.

**{¶56}** We note that because Appellant was convicted of count one, this issue is moot. Nevertheless, we will address the issue raised by cross-appellant because it is an issue that is capable of repetition, yet evading review. *See State ex rel. Beacon Journal Publishing Co. v. Donaldson* (1992), 63 Ohio St.3d 173, 175, quoting *State ex rel. Plain Dealer Publishing Co. v. Barnes* (1988), 38 Ohio St.3d 165, paragraph one of the syllabus.

**{¶57}** Upon review, we find the Ohio Supreme Court in *State v. Thompson*, 33 Ohio St.3d 1 (1987), reviewed this issue and found:

> [R.C. 2907.02] simply does not require, as appellant asserts, that a specific finding be made as to the *type* of rape. Consequently, it was not error for the trial court to refuse to instruct the jury that it must make such a specific finding. The fact that some jurors might have found that appellant committed one, but not the other, type of rape in no way reduces the

reliability of appellant's conviction, because a finding of either type of conduct is sufficient to establish the fact of rape in Ohio.

**{¶58}** More recently, on State v. Gardner, 118 Ohio St.3d. 420, 2008-Ohio-2787, the Ohio Supreme Court explained:

Although Crim.R. 31(A) requires juror unanimity on each element of the crime, jurors need not agree to a single way by which an element is satisfied. *Richardson v. United States* (1999), 526 U.S. 813, 817, 119 S.Ct. 1707, 143 L.Ed.2d 985. Applying the federal counterpart of Crim.R. 31(A), *Richardson* stated that a "jury need not always decide unanimously which of several possible sets of underlying brute facts make up a particular element, say, which of several possible means the defendant used to commit an element of the crime.

**{¶59}** We find, in this case, that the State should not have been precluded from arguing that Cross-Appellee engaged in more than one act of sexual conduct under count one.

**{¶60}** We further note that the appropriate remedy for a duplicitous indictment, as stated above, is severance of the indictment into separate indictments or separate counts, not dismissal of that portion of the indictment.

{¶61} Accordingly, we sustain Cross-Appellant's assignment of error. However, since Cross-Appellee was convicted of rape under count one, this ruling has no effect on him.

{¶62} The decision of the Delaware County Court of Common Pleas is affirmed in part and reversed in part.

By: Wise, P. J.

Gwin, J., and

Baldwin, J., concur.

JWW/d 0816