[Cite as *State v. Edwards*, 2024-Ohio-2254.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. Patricia A. Delaney, P.J. |
| Plaintiff-Appellee | : | Hon. Craig R. Baldwin, J. |
| | : | Hon. Andrew J. King, J. |
| -vs- | : | |
| | : | Case No. 2023CA00088 |
| | : | |
| DEREK T. EDWARDS | : | |
| | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:      Appeal from the Stark County Court of Common Pleas, Case No. 2022CR2666


JUDGMENT:      AFFIRMED


DATE OF JUDGMENT ENTRY:      June 11, 2024


APPEARANCES:

For Plaintiff-Appellee:

KYLE L. STONE
STARK CO. PROSECUTOR
CHRISTOPHER A. PIEKARSKI
110 Central Plaza South, Ste. 510
Canton, OH 44702-1413

For Defendant-Appellant:

D. COLEMAN BOND
116 Cleveland Ave. NW
Suite 600
Canton, OH 44702

*Delaney, P.J.*

{¶1}   Appellant Derek T. Edwards appeals from the July 10, 2023 Judgment Entry of the Stark County Court of Common Pleas.  Appellee is the state of Ohio.

**FACTS AND PROCEDURAL HISTORY**

{¶2}  This case arose on December 14, 2022, when appellant repeatedly stabbed the victim, his Brother.

{¶3} Appellant is four years older than Brother and the two grew up together; they have different fathers.  As they got older, they became estranged for various reasons including fighting over girlfriends. Once they fought with each other, with appellant attempting to hit Brother with a rake and Brother pulling appellant out of a car and throwing him on the ground.  The two did not speak for some time following this fight.

{¶4} In December 2022, the two reconnected and Brother planned to stay at appellant's house for a few days.  Appellant picked Brother up from their Mother's house and brought him home. Brother was recently divorced and hoping to help appellant through a rough time when he was purportedly suicidal.

{¶5} All was not calm at appellant's house, however. Brother complained that appellant left him alone in the house overnight without a phone, tv, or internet connection. The two later fixed Brother's phone and then did drugs together, specifically methamphetamine.

{¶6} Brother testified he and appellant used methamphetamine around noon or 1:00 p.m. on December 14, 2022.  Afterward, appellant's Girlfriend came over and fought with appellant.  The fight escalated to the point that Brother told appellant they needed to leave the house because the situation was too stressful.

{¶7} Brother and appellant got into appellant's car together, intending to drive to Alliance, but appellant said he needed to stop in Canton first. As they drove, appellant talked about fighting with Girlfriend, and Brother responded that appellant "beat all of his girlfriends." Brother testified appellant was enraged by this comment and threatened to "beat [Brother's] ass." Brother denied striking or punching appellant. Brother then felt something "tapping" on his side, and realized appellant was stabbing him repeatedly. Brother tried to stop appellant but had no strength, and appellant said "Fucking die, bitch," and stabbed him in the chest. Brother testified he pulled the knife out of his own chest and attempted to fight back but didn't have the strength to do so.

{¶8} Brother saw blood all over the interior of the car and "played dead" by slumping over in his seat. He thought he was about to die. He felt appellant going through the pockets of his hoodie as he was slumped in the car, and his possessions including his phone, medical and ID cards, and medication were never found. Brother speculated appellant threw them out of the vehicle.

{¶9} Appellant drove to Mercy Hospital as Brother continued to "play dead." The car stopped and appellant got out. Brother got out of the car and tried to run, but collapsed after two steps.

{¶10} Brother testified he felt excruciating pain in the hospital parking lot, and he was aware of people running to help him. He recalls being rolled into the hospital and doctors working on him. He thought he was going to die that night, but woke up the next morning surprised and glad to be alive.

{¶11} Brother was interviewed by Canton police in the hospital, where he remained for six days. His injuries still required ongoing treatment at the time of trial. Brother has not spoken to appellant since the night of the stabbing.

{¶12} On cross examination, Brother acknowledged he has mental health issues and stopped taking his medication in September 2022. He acknowledged that on the day of the stabbing, he and appellant did drugs together including methamphetamine; he denied use of heroin or opiates, despite medical records indicating he tested positive for opioids.

{¶13} On the evening of December 14, 2022, Canton police received a report of a possible shooting victim at Mercy Medical Center. Patrol units responded and Detective Vincent Romanin was assigned to investigate. Romanin learned the victim was not shot but sustained multiple stab wounds. Detectives gathered information at Mercy Medical Center including a surveillance video which showed a white Chrysler Aspen pull up to the hospital. The victim exited the passenger door of the Aspen and immediately collapsed on the ground. The driver of the vehicle got out and stood over the victim for several moments, then got back in the vehicle and fled. Detectives learned Brother was the stabbing victim and found contact information for Brother's wife.

{¶14} After contacting Brother's estranged wife, detectives investigated appellant as a potential suspect and found two addresses for him. At the first address, a white Chrysler Aspen was parked in the driveway. Romanin requested additional units to respond and police surrounded the residence. When Romanin approached the white Aspen, he observed a significant amount of blood in the passenger compartment. No one responded at the residence but a neighbor confirmed appellant lived there. Another

neighbor stated a white Jeep left the residence one to two hours before police arrived. Detectives sought, obtained, and executed search warrants for the white Aspen and the residence.

{¶15} The search of the Aspen revealed drying, flaking fresh blood on the passenger seat, center console, steering wheel, and gauges. Blood was spattered across the front of the vehicle. Police searched the residence and found knives, but none that were used in the stabbing.

{¶16} Detectives interviewed appellant seven  days after the stabbing and a redacted video of the interview was played at trial. He said he was previously in fights with Brother and sustained significant injuries, causing him to fear for his life. Appellant claimed in the incident on December 14, Brother attacked him in the vehicle as they drove, putting appellant in fear. Appellant claimed he grabbed a small pocketknife and used it in self-defense to protect himself. Appellant claimed that as Brother continued to attack him, Brother fell on the knife, and when he realized Brother had been stabbed, he sped to Mercy Medical Center at a high rate of speed. Detectives interviewing appellant did not believe his version of events and questioned him about the lengthy route he took to get to the hospital.  Appellant admittedly stated, "That's what the fuck you get" as he stood over Brother's slumped body in the hospital parking lot.

{¶17} Appellant showed detectives injures he allegedly sustained in Brother's attack, but detectives did not find the injuries to be consistent with appellant's story. Appellant had no defensive wounds and had superficial injuries at best, including a scratched lip. Detectives did not see lumps on appellant's head, swelling on his face or cheek, or a mark on his ear, despite his allegations about where Brother struck him.

{¶18} Appellee introduced photos of Brother's stab wounds. A detective also found the knife used by appellant because appellant showed him where he threw it into the grass at Mercy Medical Center. Appellant said he threw the knife because he was scared and didn't know what to do with it.

{¶19} Appellant testified in his own defense, stating he had a difficult relationship with Brother for many years and Brother has assaulted him in the past, breaking his ribs. Appellant pointed out Brother is physically larger than him and said their relationship was estranged in the past due to Brother's violence toward him.

{¶20} Brother was stopping in at Mother's house and encountered appellant several times, leading them to rekindle the relationship. Appellant said Brother came to stay at his house for a few days, but a problem arose when appellant fell asleep at a friend's house, leaving Brother overnight with no phone, tv, or internet access. When he returned to the house, appellant apologized to Brother, but Brother was high on methamphetamine and very agitated. Appellant's Girlfriend came to the house and they argued, so Brother asked to leave.

{¶21} Appellant testified he told Brother he would drive him to Alliance, but he needed to pick up a friend in Canton first. Appellant testified that as the car approached the intersection of 12th Street and McKinley, Brother became irate due to an issue with his phone; appellant said Brother was "tweaking hard." Appellant testified that as he turned onto McKinley, Brother struck him in the face, splitting his lip; Brother continued to strike appellant in the head and face, and slammed his head into the steering wheel, in an attempt to wreck appellant's truck.

{¶22} Appellant claimed he believed Brother was going to kill him, so he stabbed Brother in self-defense. The stabbing did not stop Brother's attack, however, and Brother continued to hit appellant. Appellant then continued to stab Brother until the hitting stopped, and appellant realized the extent of Brother's injuries. Appellant testified he realized he needed to get Brother to the hospital immediately, and drove to Mercy Medical Center at 100 miles per hour, taking Walnut Road to Route 62 to Interstate 77.

{¶23} Appellant said he pulled into the hospital and Brother fell out of the car. Appellant motioned to a hospital worker for help, then left the scene. Appellant testified he fled because he believed he killed Brother and thought he would get the death penalty. Appellant testified he was not trying to kill Brother and only wanted to stop the attack. He said he sustained a black eye and knots on his face and neck due to Brother's attack. Appellant said he suffered a previous hand injury which prevents him from fighting: his hand was cut off then reattached after a work accident. Appellant testified he struggles to use the hand and cannot pick up a gallon of milk after the injury.

{¶24} Appellant's mother and stepfather arrived at the hospital because he called them and told them to check on Brother.

*Indictment, trial, conviction, and sentence*

{¶25} Appellant was charged by indictment with one count of attempted murder pursuant to R.C. 2923.02(A), (B), and (D), a felony of the first degree [Count I]; one count of felonious assault pursuant to R.C. 2903.11(A)(D)(1)(a), a felony of the second degree [Count II]; one count of kidnapping pursuant to R.C. 2905.01(A)(2)(3)(C)(1), a felony of the first degree [Count III]; and one count of tampering with evidence pursuant to R.C. 2921.12(A)(1)(B), a felony of the third degree [Count IV].

{¶26} Appellant entered pleas of not guilty and the matter proceeded to trial by jury. Appellant moved for a judgment of acquittal pursuant to Crim.R. 29(A) at the close of appellee's evidence and at the close of all of the evidence; the motions were overruled. The trial court instructed the jury upon self-defense relative to Counts I and II. Appellant was found guilty upon Counts I, II, and IV, and not guilty upon Count III. The trial court sentenced appellant to a total aggregate prison term of 8 to 12 years.

{¶27} Appellant now appeals from the judgment entry of his convictions and sentence.

{¶28} Appellant raises two assignments of error:

**ASSIGNMENTS OF ERROR**

{¶29} "I. THE STATE FAILED TO PRESENT SUFFICIENT EVIDENCE TO SUSTAIN A CONVICTION AGAINST APPELLANT, AND THE CONVICTION MUST BE REVERSED."

{¶30} "II. THE APPELLANT'S CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE PRESENTED, AND MUST BE REVERSED."

**ANALYSIS**

I., II.

{¶31} Appellant's first and second assignments of error are related and will be considered together. Appellant argues his convictions are against the manifest weight and sufficiency of the evidence. We disagree.

{¶32} The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different. *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541, paragraph two of the syllabus. The standard of review

for a challenge to the sufficiency of the evidence is set forth in *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991) at paragraph two of the syllabus, in which the Ohio Supreme Court held, "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."

{¶33} In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as the "thirteenth juror," and after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered." *State v. Thompkins*, supra, 78 Ohio St.3d at 387. Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

*Self-defense*

{¶34} Appellant first argues his convictions for attempted murder and felonious assault are against the manifest weight of the evidence because appellee failed to prove he did not act in self-defense. Appellee's burden of disproving the defendant's self-defense claim beyond a reasonable doubt is subject to a manifest-weight review on appeal. *State v. Watson*, 5th Dist. Stark No. 2022CA00145, 2023-Ohio-3137, ¶ 74, citing

*State v. Messenger*, 171 Ohio St.3d 227, 2022-Ohio-4562, 216 N.E.3d 653, ¶ 27. As to the weight of the evidence, the issue is whether the jury created a manifest miscarriage of justice in resolving conflicting evidence, even though the evidence of guilt was legally sufficient. *State v. Thompkins*, 78 Ohio St.3d 380, 386–387, 678 N.E.2d 541 (1997), superseded by constitutional amendment on other grounds.

{¶35} "Weight of the evidence" addresses the evidence's effect of inducing belief. *State v. Thompkins*, *supra,* 78 Ohio St.3d at 386-387.  When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "thirteenth juror" and disagrees with the fact finder's resolution of the conflicting testimony. *Thompkins* at 387, *citing Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652(1982)*.*

{¶36} Once the reviewing court finishes its examination, an appellate court may not merely substitute its view for that of the jury, but must find that "'the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins, supra*, 78 Ohio St.3d at 387, *quoting State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 71 (1st Dist. 1983).

{¶37} Appellant challenges his conviction upon one count of attempted murder pursuant to R.C. 2923.02(A) and 2903.03(A) and (B), which provide:

> 2923.02(A): No person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense.

2903.03(A)(B):

(A) No person shall purposely cause the death of another or the unlawful termination of another's pregnancy.

(B) No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree and that is not a violation of section 2903.03 or 2903.04 of the Revised Code.

{¶38} Appellant also challenges his conviction upon one count of felonious assault pursuant to R.C. 2903.11(A), which states:

(A) No person shall knowingly do either of the following:

(1) Cause serious physical harm to another or to another's unborn;

(2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance.

{¶39} When an accused asserts the defense of self-defense, he does not seek to negate any of the elements of the offense which appellee is required to prove. Self-defense is an admission of the prohibited conduct coupled with a claim that the surrounding facts or circumstances exempt the accused from liability therefor— "justification for admitted conduct." *Watson*, supra, 2023-Ohio-3137, ¶ 80, citing *State v. Poole*, 33 Ohio St.2d 18, 294 N.E.2d 888 (1973).

{¶40} R.C. 2901.05(B)(1) provides as follows regarding self-defense:

(B)(1) A person is allowed to act in self-defense, defense of another, or defense of that person's residence. If, at the trial of a person who is accused of an offense that involved the person's use of force against another, there is evidence presented that tends to support that the accused person used the force in self-defense, defense of another, or defense of that person's residence, the prosecution must prove beyond a reasonable doubt that the accused person did not use the force in self-defense, defense of another, or defense of that person's residence, as the case may be.

{¶41} Under R.C. 2901.05(B)(1), therefore, there are two burdens. *State v. Davidson-Dixon*, 8th Dist. Cuyahoga No. 109557, 2021-Ohio-1485, ¶ 18. The defendant has the initial burden of production, which is the burden of producing evidence "that tends to support" that the defendant used the force in self-defense. *Messenger,* supra, 171 Ohio St.3d 227, 2022-Ohio-4562, 216 N.E.3d 653, ¶ 21. The burden then shifts to appellee under its burden of persuasion to prove beyond a reasonable doubt that the defendant did not use the force in self-defense. *Id.* at ¶ 24. In other words, if the evidence tends to support that the defendant acted in self-defense, then the prosecution must prove beyond a reasonable doubt that the defendant did not act in self-defense. R.C. 2901.05(B)(1); *Id.* at ¶ 26. Appellee need only disprove one of the elements of self-defense beyond a reasonable doubt at trial to sustain its burden. *State v. Jackson,* 22 Ohio St.3d 281, 284, 490 N.E.2d 893 (1986).

{¶42} In the instant case, at the close of appellant's jury trial, the trial court provided the jury with an instruction regarding self-defense, which means that the trial

court concluded that the record contained evidence that tends to support that appellant used the force in self-defense when he stabbed Brother. R.C. 2901.05(B)(1); *Messenger, supra,* ¶ 26. The guilty verdict means appellee met its burden of persuading the jury beyond a reasonable doubt that appellant was not acting in self-defense when he stabbed Brother. *Id.*

{¶43} When deadly force is used, the elements of self-defense that appellee must now disprove at least one of are: (1) appellant was not at fault in creating the situation giving rise to the affray, (2) appellant had reasonable grounds to believe and an honest belief even if mistaken that he was in imminent danger of death or great bodily harm and that he did not use more force than necessary to defend against the attack, and (3) appellant must not have violated any duty to retreat or avoid the danger. *Watson,* supra, 2023-Ohio-3137, ¶ 84, citing *State v. Robbins*, 58 Ohio St.2d 74, 79, 388 N.E.2d 755 (1979).

{¶44} As to the third element of self-defense, "a person has no duty to retreat before using self-defense * * * if that person is in a place in which the person lawfully has a right to be." R.C. 2901.09(B); *Messenger,* supra, ¶ 10. "Simply put, the new 'stand your ground' law removes, in most cases, the duty to retreat before using self-defense." *Watson,* supra, ¶ 85, citing *State v. Robinette,* 5th Dist. Stark No 2021 CA 00124, 2023-Ohio-5, 205 N.E.3d 633, ¶ 51.

{¶45} The second element of self-defense "is a combined subjective and objective test." *State v. Thomas*, 77 Ohio St.3d 323, 330, 673 N.E.2d 1339 (1997). The person's belief must be objectively reasonable under the circumstances and he must subjectively believe he needed to resort to force to defend himself or the other person. *Id.* at 330–331.

{¶46} "The objective part of the test requires consideration of 'whether, considering all of the defendant's particular characteristics, knowledge, or lack of knowledge, circumstances, history, and conditions at the time of the attack,' a reasonable person would believe that danger was imminent." *Watson*, supra, 2023-Ohio-3137, ¶ 86, internal citations omitted. The subjective part requires consideration of whether the defendant himself actually believed that he was in imminent danger. *Id.*

{¶47} Here, the evidence does not support appellant's contention that he possessed the necessary objective and subjective beliefs he was in imminent or immediate danger of death or great bodily harm. Appellant acknowledges his own testimony conflicted with Brother's, and claims Brother "struck him in the face and head several times and tried to bury his head in the steering wheel of the car he was operating." Brief, 16. Moreover, Brother had ingested drugs and Brother had attacked appellant in the past, thus appellant was in justified fear of Brother. Generally, neither words alone nor fear itself will constitute evidence of serious provocation. "[W]ords alone will not constitute reasonably sufficient provocation to incite the use of deadly force in most situations." *State v. Shane,* 63 Ohio St.3d 630, 634-45, 590 N.E.2d 272 (1992). Fear alone is insufficient to demonstrate the kind of emotional state necessary to constitute sudden passion or fit of rage. *State v. Mack,* 82 Ohio St.3d 198, 201, 694 N.E.2d 1328.

{¶48} Even if we believe appellant's self-serving testimony that Brother struck appellant repeatedly as he drove, Brother's conduct does not justify appellant's decision to inflict multiple stab wounds. A victim's simple pushing or punching does not constitute sufficient provocation to incite the use of deadly force in most situations. See, *State v. Koballa,* 8th Dist. Cuyahoga No. 82013, 2003-Ohio-3535.

{¶49} Implicit in the second element of self-defense is the requirement that the degree of force used was warranted under the circumstances and proportionate to the perceived threat. *Watson*, supra, 2023-Ohio-3137, ¶ 88, citing *State v. Kean*, 10th Dist. Franklin No. 17AP-427, 2019-Ohio-1171, ¶ 58. As to the degree of force that is permitted, the defendant is privileged to use the amount of force that is reasonably necessary to repel the attack. *State v. Williford*, 49 Ohio St. 3d 247, 551 N.E.2d 1279 (1990).

{¶50} Again, even if we were to accept appellant's statements as true, Brother punched and struck appellant with his fists; appellant fails to explain why he didn't stop the car and call police instead of pulling a knife and stabbing Brother repeatedly.  Nothing in appellant's testimony describes an attack by Brother that would justify the viciousness of appellant's response.  If appellant's fear was only of physical harm, he was allowed by law only to use an amount of force that was warranted under the circumstances and proportionate to the perceived threat. *Watson*, supra, 2023-Ohio-3137, ¶ 89.  Appellant's decision to stab Brother repeatedly was deadly force and was disproportionate to the threat he faced under these circumstances.  *Id.*

{¶51} While appellant was free to argue that he was justified in using deadly force, and the trial court instructed the jury accordingly, the jury may have reasonably chosen to reject his argument. Upon careful consideration of the record in its entirety, we find that there is substantial evidence presented which if believed, proves all the elements of the crimes for which appellant was convicted. We further find there is substantial evidence proving beyond a reasonable doubt that appellant was not acting in self-defense when he stabbed Brother and the degree of force used by appellant was unwarranted under the circumstances and disproportionate to the perceived threat. Therefore, in light of the

evidence discussed above, as well as the record in its entirety, we do not find the jury clearly lost its way in finding appellant guilty of attempted murder and felonious assault and that appellant was not acting in self-defense. We do not find that the jury disregarded or overlooked compelling evidence that weighed against conviction.

*Manifest weight and sufficiency: intent*

{¶52} Next, appellant argues he didn't intent to kill Brother as evidenced by his decision to take him to the hospital. We note the evidence established appellant essentially dumped Brother at the hospital and fled; we fail to discern, and appellant does not explain, how these actions repudiate his criminal intent when he stabbed Brother repeatedly. Under Ohio law, the trier of fact may infer an intention to kill from the surrounding circumstances where the natural and probable consequence of a defendant's actions is to produce death. *State v. Jones*, 5th Dist. Richland No. 2016 CA 0045, 2017-Ohio-8633, ¶ 65, citing *State v. Turner*, 10th Dist. Franklin No. 97APA05–709, 1997 WL 798770, internal citation omitted. Appellant admittedly stood over Brother and said, "That's what the fuck you get," which directly contradicts his claim he was worried about Brother's survival at the hospital.

{¶53} Upon our review of the record and transcript in a light most favorable to appellee, we find that a reasonable finder of fact could have found beyond a reasonable doubt that appellant purposely attempted to cause Brother's death by repeatedly stabbing him inside the vehicle. *Id.,* ¶ 66. Intent to kill a victim may be inferred from the use of a knife to stab the victim multiple times, from which evidence the jury could conclude appellant acted purposely with the specific intention of causing the victim's death.  See,

*State v. Hoke*, 5th Dist. Knox No. 99-CA-19, unreported, 2000 WL 987258, *2 (July 17, 2000).

*Manifest weight and sufficiency:  tampering with evidence*

{¶54} Finally, appellant argues there is insufficient evidence he committed the offense of tampering with evidence because although he threw the knife into the grass at Mercy Medical Center, he later revealed its location to investigators. Appellant was charged with one count of tampering with evidence pursuant to R.C. 2921.12(A)(1), which states, "no person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall * * * [a]lter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation."

{¶55} In the instant case, appellee produced evidence appellant discarded the knife in the grass because he knew an investigation into the stabbing was likely; he told police in his interview he was scared and didn't know what to do, and "just wanted to get rid of" the knife. Appellant was admittedly acting with the belief he likely killed Brother and feared the potential penalty of life in prison or the death penalty.

{¶56} The jury as the trier of fact was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. Indeed, the trier of fact need not believe all of a witness' testimony, but may accept only portions of it as true. *State v. Miller*, 5th Dist. No. 17 CAA 08 0062, 2018-Ohio-3481, 118 N.E.3d 1129, ¶ 47, citing *State v. Raver*, 10th Dist. Franklin No. 02AP-604, 2003-Ohio-958, 2003 WL 723225, ¶ 21, internal citations omitted.

{¶57} We find that this is not an "'exceptional case in which the evidence weighs heavily against the conviction.'" *State v. Thompkins*, 78 Ohio St.3d 380, 386–387, 678 N.E.2d 541 (1997), *quoting Martin*, 20 Ohio App.3d at 175, 485 N.E.2d 717. The jury neither lost his way nor created a miscarriage of justice in convicting appellant. Based upon the foregoing and the entire record in this matter, we find appellant's convictions are not against the manifest weight of the evidence. To the contrary, the jury appears to have fairly and impartially decided the matter. The jury heard the witnesses, evaluated the evidence, and was convinced of appellant's guilt.

{¶58} Our review of the entire record reveals no significant inconsistencies or other conflicts in appellee's evidence which would demonstrate a lack of credibility of the witnesses sufficient to find the jury lost its way to finding appellant guilty. *Miller*, supra, 2018-Ohio-3481, ¶ 49.

{¶59} Appellant's first and second assignments of error are overruled.

## CONCLUSION

{¶60} Appellant's two assignments of error are overruled and the judgment of the Stark County Court of Common Pleas is affirmed.

By:  Delaney, P.J.,

Baldwin, J. and

King, J., concur.