[Cite as *Stockmeister Ents. v. Lancaster*, 2019-Ohio-1338.]

SCOURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | | |
|---|---|---|
| STOCKMEISTER ENTERPRISES, INC. : | | JUDGES: |
| : | | Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellant/Cross- : | | Hon. John W. Wise, J. |
| Appellee : | | Hon. Earle E. Wise, Jr., J. |
| : | | |
| -vs- : | | |
| : | | |
| CITY OF LANCASTER, OHIO : | | Case No. 18-CA-32 |
| : | | |
| Defendant-Appellee/Cross- : | | |
| Appellant : | | O P I N I O N |


CHARACTER OF PROCEEDING:        Appeal from the Court of Common
                                Pleas, Case No. 2015CV00617



JUDGMENT:                       Affirmed



DATE OF JUDGMENT:               April 5, 2019




APPEARANCES:

For Plaintiff-Appellant                 For Defendant-Appellee

MARION H. LITTLE, JR.                   JEFFREY P. MCSHERRY
CHRISTOPHER J. HOGAN                    MARK E. EVANS
3500 Huntington Center                  PRAMILA A. KAMATH
41 South High Street                    201 East Fifth Street, Suite 1110
Columbus, OH  43215                     Cincinnati, OH  45202

*Wise, Earle, J.*

{¶ 1}  Plaintiff-Appellant, Stockmeister Enterprises, Inc., appeals the March 30, 2018 judgment entry of the Court of Common Pleas of Licking County, Ohio, granting judgment to Defendant-Appellee, City of Lancaster, Ohio.  Appellant's surety, Travelers Casualty and Surety Company of America is also an appellant.  The city cross-appeals the trial court's decision on the attorney fee award.

FACTS AND PROCEDURAL HISTORY

{¶ 2}  Following a bidding process, in January 2015, the city awarded Stockmeister the general contract for the Glassco Park Drainage Improvements Project, a three million dollar project.  Per the terms of the contract, Stockmeister obtained a performance surety bond from Travelers.

{¶ 3}  Part of the project included the construction of an underground lift station. Stockmeister experienced problems constructing the lift station because of excessive groundwater.  Stockmeister submitted a statement of claim that sought design changes to address the problems.  The city did not accept the claim.

{¶ 4}  On July 22, 2015, Stockmeister filed a complaint against the city, asserting claims for declaratory relief, breach of contract, and breach of express and implied warranties.

{¶ 5}  On August 19, 2015, the city filed an answer and counterclaim against Stockmeister and included a counterclaim against Travelers.  The counterclaim against Stockmeister alleged breach of contract, and sought declaratory relief on indemnification and liquidated damages.  The counterclaim against Travelers sought declaratory relief on liability as surety.

{¶ 6}   A jury trial commenced on September 25, 2017.  The jury found in favor of the city and against appellants in the amount of $1,525,345.  On November 17, 2017, the trial court entered judgment on the jury's verdict, plus statutory interest.

{¶ 7}   On November 30, 2017, the city filed motions for prejudgment interest and attorney fees, expenses, and costs.  By judgment entries filed March 30, 2018, the trial court granted the city's motions in part and awarded prejudgment interest totaling $90,293.48 and attorney fees, expenses, and costs in the amount of $399,134.90.

{¶ 8}   Appellants filed an appeal and assigned the following errors:

I

{¶ 9}   "THE JURY VERDICT AND RESULTING JUDGMENT ISSUED BELOW SHOULD BE REVERSED AND VACATED BECAUSE THE TRIAL COURT IMPROPERLY ALLOWED COUNSEL FOR DEFENDANT/APPELLEE CITY OF LANCASTER TO INHERENTLY PREJUDICE AND TAINT THE PROCEEDINGS VIA INAPPROPRIATE AND MISLEADING COMMENTS MADE DURING CLOSING STATEMENT"

II

{¶ 10} "THE JURY'S VERDICT AND RESULTING JUDGMENT AS TO LIQUIDATED DAMAGES SHOULD BE REVERSED AND VACATED BECAUSE THE CONTRACTUAL 'LIQUIDATED DAMAGES' PROVISION AT ISSUE IS UNENFORCEABLE UNDER OHIO LAW"

III

{¶ 11} "THE TRIAL COURT'S POST-VERDICT CONSIDERATION AND AWARD OF CONTRACTUAL ATTORNEYS' FEES AND EXPENSES TO LANCASTER SHOULD BE REVERSED AND VACATED"

{¶ 12} The city filed a cross-appeal and assigned the following cross-assignment of error:

CROSS-ASSIGNMENT OF ERROR I

{¶ 13} "THE TRIAL COURT ERRED IN DETERMINING THAT THE CITY'S ATTORNEYS' HOURLY RATES WERE EXCESSIVE BECAUSE THERE WAS NO COMPETENT, CREDIBLE EVIDENCE THAT THE CITY'S ATTORNEYS' RATES WERE UNREASONABLE."

{¶ 14} This matter is now before this court for consideration.

I

{¶ 15} In their first assignment of error, appellants claim the trial court allowed the city to make prejudicial comments during closing argument on Travelers's role as "an insurance company." We disagree.

{¶ 16} "The assessment of whether the permissible bounds of closing argument have been exceeded is, in the first instance, a discretionary function to be performed by the trial court. Such determination will not be reversed on appeal absent an abuse of discretion." *Pang v. Minch,* 53 Ohio St.3d 186, 559 N.E.2d 1313 (1990), paragraph three of the syllabus. In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

{¶ 17} Appellants argue comments made during the city's closing argument were misleading and prejudicial warranting a reversal. We note appellants did not object to any of the complained of comments during closing argument, nor did appellants request a curative instruction. Appellants now argue "[w]here gross and abusive conduct occurs [during argument to the jury], the trial court is bound, sua sponte, to correct the prejudicial effect of counsel's misconduct." *Snyder v. Stanford,* 15 Ohio St.2d 31, 37, 238 N.E.2d 563 (1968), superseded by rule on other grounds.

{¶ 18} Appellants' failure to object during the closing argument triggers a plain error review. Civil plain error is defined in *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 679 N.E.2d 1099 (1997), syllabus, as "error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." The *Goldfuss* court at 121, explained the following:

> The plain error doctrine originated as a criminal law concept. In applying the doctrine of plain error in a civil case, reviewing courts must proceed with the utmost caution, limiting the doctrine strictly to those extremely rare cases where exceptional circumstances require its application to prevent a manifest miscarriage of justice, and where the error complained of, if left uncorrected, would have a material adverse effect on the character of, and public confidence in, judicial proceedings.

{¶ 19} In their appellate brief at page 11, appellants argue during closing argument, counsel for the city "mischaracterized Travelers' true role as a bond surety by describing it as an 'insurance company,' asserting that it engaged in purported bad faith in allegedly driving the bus of litigation, and in describing its total assets company-wide." Appellants set forth several complained of statements in their brief at pages 11-14.

{¶ 20} On cross-examination, Stockmeister's president, Craig Rader, testified to Travelers's role as a surety. T. at 293-295; Joint Exhibit 1. A review of the city's closing argument demonstrates that the city referred to Travelers as "the surety company," and explained to the jury the role of a surety company and the bond it provides. T. at 1271-1272, 1277, 1313. We do not find the city mislead the jury on Travelers's role in the case.

{¶ 21} In their appellate brief at pages 22-23, appellants argue the city made statements that "were clearly designed to enflame the passions of the Jury." The city asked the jury for 2.3 million dollars, but the jury returned a verdict of 1.5 million. We do not find the jury was swayed by the complained of statements.

{¶ 22} If counsel for the city offered so many misleading, prejudicial statements regarding Travelers, appellants could have objected or stood up and refuted them. However, appellants never objected nor offered a rebuttal closing argument. T. at 1314.

{¶ 23} Furthermore, the trial court instructed the jury that "opening statements and the closing arguments of counsel are designed to assist you. They are not evidence." T. 1320. A jury is presumed to have properly followed the instructions given by the trial court. *Pang, supra,* at paragraph four of the syllabus.

{¶ 24} Although not specifically assigned as error, in their appellate brief at pages 14-15, appellants make an argument about the trial court rejecting their proposed jury

instruction on surety bonds. Appellants did not include the cited instruction in their proposed jury instructions to the trial court filed September 18, 2017, nor did appellants object to the trial court's final jury instructions on this issue. The cited instruction appears in an attachment to appellants' motion for judgment notwithstanding the verdict filed on October 30, 2017, well after the verdict on October 2, 2017. We find no merit to this argument.

{¶ 25} In reviewing the city's closing argument as a whole, we do not find "gross and abusive conduct." We do not find the complained of statements to be so reprehensible as to prejudice appellants' case. Therefore, upon review, we do not find any plain error regarding the city's closing argument, and find the trial court did not abuse its discretion in not sua sponte jumping in to correct counsel for the city.

{¶ 26} Assignment of Error I is denied.

II

{¶ 27} In their second assignment of error, appellants claim the jury's award of liquidated damages should be reversed because the liquidated damages provision in the contract is unenforceable. We disagree.

{¶ 28} At no time during the proceedings before the trial court did appellants challenge the liquidated damages provision in the contract as being unenforceable. In its August 19, 2015 counterclaim, the city made a specific claim for liquidated damages at ¶ 38, citing the liquidated damages provision, 3.6 of the contract. In its answer filed September 21, 2015, Stockmeister did not allege that the provision was unenforceable, just that it was inapplicable due to the city's breaches.

{¶ 29} In a motion for summary judgment filed by the city on December 2, 2016, the city cited the liquidated damages provision in Section II(H), and argued it was entitled to liquidated damages in Section IV(B).  In its response filed December 16, 2016 in Section IV(D), Stockmeister did not challenge the provision, and stated: "Respectfully, the question before the court is not whether contractual liquidated damages clauses are enforceable, the question is whether there are issues of fact regarding the City's entitlement to those damages.  There are."

{¶ 30} In its trial brief filed September 18, 2017, the city discussed liquidated damages in Section C.  In its trial brief also filed September 18, 2017, Stockmeister argued in Section V(D): "Liquidated damages are not appropriate because delays were beyond Stockmeister's control."

{¶ 31} Stockmeister included a liquidated damages instruction in its proposed jury instructions filed September 18, 2017, at page 19.  The trial court included a jury instruction on liquidated damages which was not objected to by appellants.  T. at 1336-1339.

{¶ 32} Now in its appellate brief at page 25, appellants are arguing, "liquidated damages provisions are enforceable only to the extent they are reasonable.  That is, an enforceable liquidated damages provision must be reasonable _both_ as a predictor of future damages at the time the contract is executed, and as a proxy for the actual losses suffered as a result of breach."  In support, appellants go on at page 26 to cite language from a case which starts with, "when a stipulated damages provision is challenged, the court must step back and examine it * * *."  Appellants in this case never challenged the liquidated damages provision to the trial court.

{¶ 33} Appellants were well aware of the time periods the city was using for its liquidated damages claim (substantial and final completion dates). Through Interrogatory No. 11, the jury set forth the number of days they found appellants to be in breach of the substantial and final completion dates, listed the per diem rates as set forth in the liquidated damages provision in the contract, and computed the math correctly. The interrogatory specifically instructed the jury to compute the days for "non-lift station work." Appellants have not assigned as error any claim of the jury's finding being against the sufficiency or manifest weight of the evidence.

{¶ 34} Upon review, we do not find any basis to reverse the jury's award of liquidated damages.

{¶ 35} Assignment of Error II is denied.

III

{¶ 36} In their third assignment of error, appellants claim the trial court's post-verdict award of attorney fees and expenses should be reversed because the issue should have been submitted to the jury. We disagree.

{¶ 37} In support of their argument, appellants cite the case of *Stonehenge Land Co. v. Beazer Homes Investments, LLC,* 177 Ohio App.3d 7, 2008-Ohio-148, 893 N.E.2d 855 (10th Dist.), wherein our colleagues from the Tenth District stated the following at ¶ 48:

Moreover, the trial court did not err in submitting the attorney-fee issue to the jury rather than holding a separate posttrial hearing on the matter. "Generally, attorney's fees are allowable as damages in breach of

contract cases where the parties have bargained for a particular result and the breaching party's wrongful conduct led to the legal fees being incurred." * * * Because the attorney fees being sought herein were in the nature of damages, the trial court was required to submit the issue to the jury. "If the fees are damages, then the availability and amount of such fees have to be determined by the jury." (Citations omitted.)

{¶ 38} In making these statements, the Tenth District was discussing the attorney fees claim of the plaintiff, Stonehenge. In reviewing the attorney fees claim of the defendant, Beazer, the court stated at ¶ 41:

We are persuaded that Beazer did not acquire the right to attorney fees for its successful defense of Stonehenge's claim for breach of the 2000 contract until the jury rendered its verdict in Beazer's favor on this claim. Thus, it was not required to seek its reasonable attorney fees until that time. We note that Beazer moved for an award of attorney fees and a hearing on the issue merely three days after the jury rendered its verdict. Under these circumstances, we agree that the trial court erred in summarily denying Beazer's motion for a hearing on its request for attorney fees.

{¶ 39} As in the case sub judice, the city was the defendant, and until the city successfully defended appellants' claims and was successful on its claims against

appellants, the city's right to recover attorney fees "was not ripe for determination." Appellee's Brief at page 29.

{¶ 40} Upon review, we find the trial court did not err in determining any claim by the city for attorney fees should be presented and determined post-verdict.

{¶ 41} Assignment of Error III is denied.

CROSS-ASSIGNMENT OF ERROR I

{¶ 42} In its cross-assignment of error, the city claims the trial court erred in determining the city's attorneys' hourly rates were excessive because there was no competent, credible evidence that the rates were unreasonable. We disagree.

{¶ 43} "When, as here, contractual agreements provide for attorney fees but do not specify the amount of fees that are awardable, a trial court has discretion to determine the amount of fees reasonably necessary under the circumstances." *Hustler Cincinnati, Inc. v. Elm 411, L.L.C.,* 1st Dist. Hamilton No. C-130754, 2014-Ohio-5684, ¶ 22; *Blakemore, supra.* "Any attorney fee awarded must be 'fair, just and reasonable as determined by the trial court upon full consideration of all of the circumstances of the case.' " *Hustler* at ¶ 22, quoting *Nottingdale Homeowners' Association,* 33 Ohio St.3d 32, 514 N.E.2d 702 (1987), syllabus.

{¶ 44} In determining the amount of reasonable attorney fees, a trial court should first calculate the "lodestar" amount by multiplying the number of hours reasonably expended by a reasonable hourly rate. *Bittner v. Tri-County Toyota, Inc.,* 58 Ohio St.3d 143, 145, 569 N.E.2d 464 (1991). After arriving at the lodestar figure, a trial court may modify the amount based on the factors listed in Prof.Cond.R. 1.5 which governs fees

and expenses. Subsection (a) lists the following factors to be considered in determining the reasonableness of a fee:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
>
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
>
> (3) the fee customarily charged in the locality for similar legal services;
>
> (4) the amount involved and results obtained;
>
> (5) the time limitations imposed by the client or by the circumstances;
>
> (6) the nature and length of the professional relationship with the client;
>
> (7) the experience, reputation, and ability of the lawyer performing the services;
>
> (8) whether the fee is fixed or contingent.

{¶ 45} In its November 30, 2017 motion for attorney fees, expenses, and costs, the city requested $489,098.75 for attorney fees. The city presented the affidavits of trial counsel as well as detailed invoices and expert opinion that the number of hours expended and the rates charged were reasonable (Paynter Affidavit). In response, appellants presented the affidavit of their expert who opined the hourly rates "are well

above what I consider to be reasonable in this or any other any (sic) complex litigation case tried to verdict in the Common Pleas Court of Licking County, Ohio." (Meyer Affidavit at ¶ 11). The city argues Mr. Paynter is an experienced construction litigation attorney whereas Mr. Meyer's practice is primarily focused on insurance defense and medical malpractice litigation. The city points out in his affidavit at ¶ 6, Mr. Meyer averred "[h]ourly rates for insurance defense cases have always been lower than other types of litigation practice."

{¶ 46} In its March 30, 2018 decision and order, the trial court noted the complex and technical nature of the case and the city's "highly experienced and skilled lawyers in litigation and in the construction field." Although the trial court granted attorney fees to the city, the trial court lowered the amount to $341,146.25, finding the following:

> Stockmeister's attempts to challenge the reasonableness of the City's fee petition are primarily based on the argument that the fees sought by the City are far in excess of those customarily charged in this county for similar legal services relative to both the hourly rate of the individual attorneys involved and the number of hours spent on the matter. And while Ohio law allows that if the firm involved has a statewide practice, its rates may be based upon its Ohio rates, the Court is not required to award fees that are far in excess of the customary rate for similar work.
>
> For the most part, based on the facts of this case and the complex protracted and contentious litigation involved, the factors listed in Rule 1.5 generally supports the City's Application for Fees, Expenses, and Costs,

but not in the amount requested.  In the Court's view, the hourly rate at which the City's attorneys billed for their time was excessive compared to fees customarily charged locally.

As noted above, this was not a run of the mill breach of contract case. It was more than that.  But it was not so complex and technical to justify a top hourly rate of $425.00 an hour.

{¶ 47} Pursuant to Prof.Cond.R. 1.5(a)(3), the trial court was permitted to consider "the fee customarily charged in the locality for similar legal services" and as stated above, the trial court's determination is reviewed under an abuse of discretion standard.  "The trial judge which participated not only in the trial but also in many of the preliminary proceedings leading up to trial has an infinitely better opportunity to determine the value of services rendered by lawyers who have tried a case before him than does an appellate court."  *Brooks v. Hurst Buick-Pontiac-Olds-GMC, Inc.,* 23 Ohio App.3d 85, 91, 491 N.E.2d 345 (12th Dist.1985).

{¶ 48}  Upon review, we cannot say the trial court abused its discretion in lowering the amount of the requested attorney fees.

{¶ 49} Cross-Assignment of Error I is denied.

{¶ 50} The judgment of the Court of Common Pleas of Licking County, Ohio is hereby affirmed.

By Wise, Earle, J.

Hoffman, P.J. and

Wise, John, J. concur.


EEW/db 318