[Cite as *State v. Edwards*, 2024-Ohio-2228.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. Patricia A. Delaney, P.J. |
| Plaintiff-Appellee | : | Hon. William B. Hoffman, J. |
| | : | Hon. Andrew J. King, J. |
| -vs- | : | |
| | : | Case No. 2023CA00103 |
| | : | |
| JEFFERY EDWARDS | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:     Appeal from the Stark County Court of
                             Common Pleas, Case No. 2023CR0189


JUDGMENT:                    AFFIRMED


DATE OF JUDGMENT ENTRY:      June 10, 2024


APPEARANCES:


For Plaintiff-Appellee:                For Defendant-Appellant:

KYLE L. STONE                          MEGAN M. PATITUCE
STARK CO. PROSECUTOR                   JOSEPH C. PATITUCE
CHRISTOPHER A. PIEKARSKI               16855 Foltz Industrial Parkway
110 Central Plaza S., Ste. 510         Strongsville, OH 44149
Canton, OH 44702-1413

*Delaney, P.J.*

{¶1}　Appellant Jeffery Edwards appeals from the July 26, 2023 Judgment Entry of conviction and sentence of the Stark County Court of Common Pleas. Appellee is the state of Ohio.

**FACTS AND PROCEDURAL HISTORY**

{¶2}　At the time of the events giving rise to this appeal, Jane Doe was six years old and lived in Canton with her Mother, Brother, and Sister.[1] All of the siblings were under age 10.　Mother and Father lived separately.　Maternal Grandmother babysat Jane and her siblings while Mother was at work.　Mother's sister is Aunt, who has a child, Cousin, with appellant.　Appellant would bring Cousin to Mother's house for Maternal Grandmother to babysit while he and Aunt were at work.　Jane Doe refers to appellant as "Uncle Jeff."

{¶3} One day in July 2022, when Jane and Brother were at Father's house, Father called Mother and said Jane disclosed allegations of sexual abuse against Uncle Jeff.　Mother spoke to Jane on the phone and told her these were very serious allegations and a man's life was at stake so she absolutely must tell the truth. Jane Doe repeated the allegations. The next morning, Mother called Canton police and a worker from Stark County DJFS came to her home. The worker assisted Mother in making a police report and brought Mother and Jane Doe to the Children's Network.

*Forensic interview at the Children's Network*

{¶4}　The Children's Network is an office housing a team approach to child abuse investigations by Stark County DJFS, law enforcement, and Akron Children's Hospital

---

[1] Jane was age 7 when she disclosed the allegations and age 8 when she testified at trial.

(ACH). The goal is to centralize the investigation and reduce the amount of time a child must tell their story. In one location, the entire team can observe and discuss forensic interviews and complete medical examinations of victims.

{¶5} In the instant case, Mother spoke with the team and briefly described Jane Doe's disclosure. Jane Doe was then taken into a separate room for a forensic interview which was live-streamed by the rest of the team and recorded. The recording was transcribed and is in the record for our review. The recording and transcript were edited by the parties and the trial court following an *Arnold* hearing, in which the trial court heard evidence as to which statements by Jane Doe during the interview were used by the ACH nurse for purposes of medical diagnosis and treatment, and were therefore admissible at trial. The remaining statements were redacted.

{¶6} Jane told the interviewer that one day when Mother, Grandmother, and Aunt were away shopping, the children were alone with Uncle Jeff and he brought Jane into Mother's bedroom. He took her pants off and took his own pants off. He touched her with his hands and mouth on her body, including her "private part" which she identified for the interviewer. She said appellant had "black stuff" on his private part. Jane further stated he "put white stuff" into her. When asked by the interviewer, "Talk about what happened with the white stuff[,]" Jane said it came out of appellant's private and went into her mouth. She spit it out into a trash can in Mother's bedroom. Appellant told Jane she better not tell or he would kill her dogs.

*Trial testimony: Mother, Nurse, Detective*

{¶7} Mother testified about the circumstances of Jane's disclosure at Father's house and the ensuing phone call. Jane identified "Uncle Jeff" as the perpetrator, and

Mother testified "Uncle Jeff" is the father of Aunt's child and is someone known to the entire family. Mother testified there was a day in September 2021, around her birthday, when the children were alone at her house with appellant because she, Aunt, and Maternal Grandmother went shopping for a party. She acknowledged there were other times appellant had access to Jane Doe because he brought Cousin to Mother's house frequently for babysitting by Maternal Grandmother, and may have been alone with Jane during periods when Mother was at work.

{¶8} Mother testified Jane's allegations have split the family and have seriously affected her relationship with Aunt. Before Jane's disclosure, Mother noticed the onset of sudden behavioral issues with Jane, including not wanting to sleep alone and bedwetting.

{¶9} Nurse is a pediatric nurse practitioner at ACH who works at the Children's Network and is an expert in diagnosis and treatment of medical conditions associated with child sexual abuse. Nurse watched Jane's forensic interview and performed the medical physical examination, which was normal. Nurse testified Jane identified "Uncle Jeff" as the perpetrator. Nurse takes Jane's statements in the interview at face value because her role is not to investigate allegations but to provide appropriate medical treatment.

{¶10} Nurse evaluated Jane Doe in July 2022 when Mother brought her in for concerns of sexual abuse. Jane was 7 years old at that time. Nurse testified the concerns were sexual abuse by "Uncle Jeff" including oral contact, oral to genital contact, and ejaculation. Mother cited behavioral concerns for Jane Doe including not acting like herself, bedwetting, and being unable to sleep alone. Nurse performed a physical exam

after the forensic interview and there were no significant physical findings. Nurse testified this was expected due to the type of sexual contact alleged and the amount of time that had passed.

{¶11} Nurse diagnosed child sexual abuse based on Jane's verbal statements; Nurse testified that Jane disclosed "Uncle Jeff" put his penis in her mouth and ejaculated; put his penis on her vagina and rubbed it; and put his mouth on her mouth, breasts, and vagina. Jane's medical evaluation was normal and the STD test was negative. Nurse also recommended trauma therapy. When asked whether she treats Jane's allegations as true without physical evidence, Nurse testified her role is not to investigate but to make a medical diagnosis and recommendations. Nurse pointed out that she watched Jane's interview before the physical examination and paid attention to contextual clues in addition to Jane's words, such as whether the details she disclosed were appropriate and within the knowledge of a typical 7-year-old.

{¶12} Detective Vincent Romanin of the Canton Police Department received a report from Stark County DJFS in August 2022 of a child sexual assault; the report identified appellant as the suspect. Romanin did not speak to Jane personally but watched her forensic interview. He spoke to Mother and Brother, learned the incident occurred at Mother's residence in Canton, and collected Mother's trash can in case it might contain DNA evidence. No DNA was found, which did not surprise Romanin due to the length of time between the abuse and the disclosure.

{¶13} Romanin called appellant and he agreed to come in for an interview, but later declined to speak to the detective. Romanin identified appellant in the courtroom as the suspect in the case.

*Jane Doe's trial testimony and Mother's testimony upon recall*

{¶14} Jane Doe testified she was 8 years old and entering third grade at the time of trial. When asked if she knew why she was in court, she responded because Uncle Jeff hurt her and she wants to stay away from him. Jane testified Uncle Jeff put white stuff in her mouth, in Mother's bedroom, and "keeps hurting [her]." T. 142. Jane specified she and the other children including Brother and Cousin were left alone with Uncle Jeff while Mother, Grandmother, and Aunt went shopping. The children were in Brother's room playing a video game when Uncle Jeff pulled Jane into Mother's bedroom, where Jane is not allowed to be.

{¶15} Jane testified Uncle Jeff pulled down her pants and his own pants, and put white stuff in her mouth. T. 144. Jane said Uncle Jeff touched her with his mouth, his private, and his hands all over her body, including her mouth, private, thighs, and butt. She testified white stuff came out of his private and he put the white stuff in her mouth. T. 145. The prosecutor asked Jane several times whether Uncle Jeff put his private in her mouth and she said "No." T 144-145. She said when he touched her private, his hand went inside, and that when he put the white stuff in her mouth, she spit it out into a trash can. T. 145. Uncle Jeff told her that if she told anyone, he would kill her dogs, her entire family, and Jane, and she was afraid. T. 146.

{¶16} The prosecutor asked whether "Uncle Jeff" was present in the courtroom and Jane said no. The prosecutor asked permission for Jane to come down from the witness stand, look around the courtroom, and point out "Uncle Jeff." The trial court assented, but Jane did not identify appellant, and said "Maybe that's him in the back." T.

146. Jane testified she was 6 years old when the abuse occurred and she has not seen "Uncle Jeff" since.

{¶17} On cross examination, Jane said Uncle Jeff hurt her "multiple" times but only put "white stuff" in her mouth once. She specified "multiple" means two or three times. She testified she didn't remember what happened the other times but he hurt her.

{¶18} On redirect, Jane testified she doesn't remember what Uncle Jeff looks like and when asked if she knows where he is, she responded that she hopes he is in jail. T. 158-159.

{¶19} Appellee recalled Mother over objection and asked whether "Uncle Jeff" was in the courtroom. Mother said yes and identified appellant as "Uncle Jeff," Aunt's boyfriend, the person Jane Doe knows as her uncle.

*Indictment, trial, conviction, and life sentence*

{¶20} Appellant was charged by indictment with one count of rape pursuant to R.C. 2907.02(A)(1)(b) and (B), a felony of the first degree [Count I] and one count of gross sexual imposition (G.S.I.) pursuant to R.C. 2907.05(A)(4), a felony of the third degree [Count II]. Both counts included a sexually-violent predator specification pursuant to R.C. 2941.148(A); the specifications were later dismissed by appellee because appellant did not have two separate prior convictions.

{¶21} Appellant entered pleas of not guilty and the matter proceeded to trial by jury. Appellant moved for a judgment of acquittal pursuant to Crim.R. 29(A) at the close of appellee's evidence and at the close of all of the evidence. Appellant was found guilty as charged. At a subsequent sentencing hearing, appellant was sentenced to life in prison without the possibility of parole and designated a Tier III sex offender.

{¶22} Appellant now appeals from the trial court's judgment of conviction and sentence.

{¶23} Appellant raises three assignments of error:

## ASSIGNMENTS OF ERROR

{¶24} "I. THE STATE FAILED TO PRESENT SUFFICIENT EVIDENCE TO SUSTAIN A CONVICTION."

{¶25} "II. MR. EDWARDS' CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

{¶26} "III. THE TRIAL COURT DENIED MR. EDWARDS THE RIGHT TO PRESENT A DEFENSE BY REFUSING TO ALLOW A COMPLETE CLOSING ARGUMENT TO BE MADE."

## ANALYSIS

### I., II.

{¶27} Appellant's first and second assignments of error are related and will be considered together.  He argues his convictions are not supported by sufficient evidence and are against the manifest weight of the evidence.  We disagree.

{¶28} The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different.  *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541, paragraph two of the syllabus. The standard of review for a challenge to the sufficiency of the evidence is set forth in *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991) at paragraph two of the syllabus, in which the Ohio Supreme Court held, "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to

determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."

{¶29} In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as the "thirteenth juror," and after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered." *State v. Thompkins*, supra, 78 Ohio St.3d at 387. Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

{¶30} We have held that the testimony of one witness, if believed by the factfinder, is enough to support a conviction. *See, State v. Dunn*, 5th Dist. Stark No. 2008-CA-00137, 2009-Ohio-1688, 2009 WL 943968, ¶ 133. The weight to be given the evidence introduced at trial and the credibility of the witnesses are primarily for the trier of fact to determine. *State v. Thomas*, 70 Ohio St.2d 79, 434 N.E.2d 1356 (1982), syllabus.

*Appellant's convictions and Jane's testimony*

{¶31} Appellant was convicted of one count of rape pursuant to R.C. 2907.02(A)(1)(b), which states, "No person shall engage in sexual conduct with another who is not the spouse of the offender * * * when [t]he other person is less than thirteen years of age, whether or not the offender knows the age of the other person."

{¶32} R.C. 2907.01(A) defines "sexual conduct" as, e.g., fellatio, and, "without privilege to do so, the insertion, however slight, of any part of the body * * * into the vaginal opening of another." The Revised Code does not define "fellatio," but the Ohio Supreme Court has used the construction of that term according to common usage guided by its dictionary definition, *i.e.,* "the practice of obtaining sexual satisfaction by oral stimulation of the penis." *In re M.D.*, 38 Ohio St.3d 149, 152, 527 N.E.2d 286, 289 (1988), citing Webster's Third New International Dictionary (1986), at 836. The Court has further noted that the term "encompass[es] elements of either stimulation or sexual satisfaction, or both." *Id.,* internal citation omitted.

{¶33} In the instant case, Jane Doe testified appellant pulled down her pants, pulled down his pants, and put "white stuff" in her mouth. T. 144. He told her to open her mouth, and she did, and white stuff came out. T. 144. During the forensic interview, a recording of which was introduced by appellee at trial as State's Exhibit 3, Jane stated appellant pulled down his pants, put his private into her mouth, "white stuff" came out of his private, and Jane spit the "white stuff" into a trash can.

{¶34} In Count II, appellant was found guilty upon one count of G.S.I. pursuant to R.C. 2907.05(A)(4), which states, "No person shall have sexual contact with another, not the spouse of the offender; * * * when * * * [t]he other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of that person."

{¶35} "Sexual contact" is defined by R.C. 2907.01(B) as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic

region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person."

{¶36} In the instant case, Jane testified appellant's mouth touched everywhere on her body, including her mouth, private, thighs, and butt. T. 144. He touched her private with his hand and his hand went inside her private. T. 145. During the forensic interview, Jane stated appellant touched her all over with his hands and mouth, including on her private, "boobs," and butt.

*Appellant's arguments as to "sexual conduct" and identification*

{¶37} Appellant first argues appellee presented insufficient evidence of sexual conduct, in this case, fellatio, pointing to Jane's trial testimony that appellant did not place his penis in her mouth. Appellant acknowledges Jane stated appellant's penis did go into her mouth in the forensic interview. Transcript of interview, 21; Brief, 5. Appellant further acknowledges Jane consistently stated "white stuff" came out of appellant's "private" into her mouth, at both the forensic interview and in her trial testimony. Brief, 4-5.

{¶38} Upon our review of the trial record and the transcript of Jane's forensic interview, Jane's denial at trial that appellant's private went into her mouth is inconsistent with her statements at the forensic interview, her disclosures to her family, and with the overall nature of the disclosure itself describing fellatio. This inconsistency does not render appellee's evidence insufficient, however. While the jury may take note of inconsistencies and resolve or discount them accordingly, such inconsistencies alone do not render a conviction against the manifest weight or sufficiency of the evidence. *State v. Craig*, 10th Dist. Franklin No. 99AP-739, 2000 WL 297252, (Mar. 23, 2000) *3, *quoting* *State v. Nivens*, 10th Dist. Franklin No. 95APA09-1236, 1996 WL 284714 (May 28, 1996).

{¶39} In a case involving inconsistencies in the testimony of a 7-year-old child victim, this Court noted, "The jury was free to use their life experiences in assessing the testimony of a child verses an adult and draw its conclusion." *State v. Allen*, 5th Dist. Stark No. 2021CA00051, 2022-Ohio-268, ¶ 31. We note Nurse stressed the importance of contextual clues in a child's statements about sexual abuse; in this case, Jane's knowledge of "white stuff" coming out of appellant's "private" into her mouth is inappropriate knowledge for a child of her age. Jane's discomfort with describing the details of the abuse was evident in both the forensic interview and at trial; the jury may have reasonably found her discomfort to account for the inconsistency about the detail of whether appellant placed his "private" in the mouth. We therefore find this inconsistency in the Jane's statements regarding the sexual conduct does not render the judgment against the manifest weight or sufficiency of the evidence.

{¶40} The jury as the trier of fact was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. Indeed, the trier of fact need not believe all of a witness' testimony, but may accept only portions of it as true. *State v. Miller*, 5th Dist. No. 17 CAA 08 0062, 2018-Ohio-3481, 118 N.E.3d 1129, ¶ 47, citing *State v. Raver*, 10th Dist. Franklin No. 02AP-604, 2003-Ohio-958, 2003 WL 723225, ¶ 21, internal citations omitted.

{¶41} We find the Jane's statements sufficient evidence, if believed by the jury, to support the rape conviction. The jury could draw the conclusion from Jane's statement about "white stuff" coming out of appellant's "private" into her mouth that sexual conduct occurred.  See, *State v. Wolters*, 5th Dist. No. 21CA000008, 2022-Ohio-538, 185 N.E.3d 601, *appeal not allowed,* 167 Ohio St.3d 1407, 2022-Ohio-2047, 188 N.E.3d 1098, and

*appeal not allowed,* 169 Ohio St.3d 1490, 2023-Ohio-1149, 206 N.E.3d 739 [inconsistencies in victim's statements regarding the sexual conduct does not render judgment against manifest weight or sufficiency of the evidence]; see also, *State v. Carbaugh,* 5th Dist. No. CT2022-0050, 2023-Ohio-1269, 213 N.E.3d 180, ¶ 47, *motion for delayed appeal granted,* 170 Ohio St.3d 1517, 2023-Ohio-2771, 214 N.E.3d 586, and *appeal not allowed,* 172 Ohio St.3d 1409, 2023-Ohio-4200, 222 N.E.3d 636 [victim described appellant's penis and "gooey stuff coming out of the hole"].

{¶42} Next, appellant argues his convictions are not supported by  sufficient evidence and are against the manifest weight of the evidence because Jane Doe failed to identify him in court.  Every criminal prosecution requires proof that the person accused of the crime is the person who committed the crime. *State v. Tate,* 140 Ohio St.3d 442, 2014-Ohio-3667, 19 N.E.3d 888, ¶ 15. Like any fact, the state can prove the identity of the accused by "circumstantial or direct" evidence. *Id.,* citing *State v. Jenks,* 61 Ohio St.3d 259, 272–273, 574 N.E.2d 492 (1991).

{¶43} In the instant case, there was no serious dispute as to the identity of the perpetrator. Jane Doe consistently said "Uncle Jeff" abused her; appellant is the man she knew as "Uncle Jeff," as acknowledged by Mother; and appellant is the man identified as the suspect by the detective. Jane did not recognize appellant in the courtroom, possibly because she had not seen him in 2 years and last saw him when she was 6 years old. Any rational finder of fact could have easily concluded beyond a reasonable doubt that appellant was the "Uncle Jeff" referred to in Jane Doe's testimony.  *Tate,* supra, at ¶ 16.  A witness need not physically point out the defendant in the courtroom as long

as there is sufficient direct or circumstantial evidence proving that the defendant was the perpetrator. *Id.* at ¶ 19, internal citations omitted.

{¶44} Nor does Jane's failure to point out "Uncle Jeff" render his conviction against the manifest weight of the evidence. A prerequisite for any reversal on manifest-weight grounds is conflicting evidence, more specifically, evidence weighing "'heavily against the conviction,'" such that "'the jury clearly lost its way and created such a manifest miscarriage of justice.'" *State v. Thompkins,* 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). As in *Tate,* in the instant case there was no conflicting evidence on the issue of identity; no other person could be mistaken for "Uncle Jeff." *Tate*, 2014-Ohio-3667, ¶ 20. Although the evidence of appellant's identity may have been circumstantial, circumstantial evidence has the same probative value as direct evidence. *Jenks*, supra, 61 Ohio St.3d at 272.

{¶45} We find that this is not an "'exceptional case in which the evidence weighs heavily against the conviction.'" *State v. Thompkins*, 78 Ohio St.3d 380, 386–387, 678 N.E.2d 541 (1997), *quoting Martin*, 20 Ohio App.3d at 175, 485 N.E.2d 717. The jury neither lost his way nor created a miscarriage of justice in convicting appellant of rape and G.S.I. Based upon the foregoing and the entire record in this matter, we find appellant's convictions are not against the manifest weight of the evidence. To the contrary, the jury appears to have fairly and impartially decided the matter. The jury heard the witnesses, evaluated the evidence, and was convinced of appellant's guilt.

{¶46} Our review of the entire record reveals no significant inconsistencies or other conflicts in appellee's evidence which would demonstrate a lack of credibility of the

witnesses sufficient to find the jury lost its way to finding appellant guilty. *Miller*, supra, 2018-Ohio-3481, ¶ 49.

{¶47} Appellant's first and second assignments of error are overruled.

III.

{¶48} In his third assignment of error, appellant argues the trial court erred in refusing to allow him to present a "complete closing argument." We disagree.

{¶49} During defense trial counsel's closing argument, counsel noted Jane Doe failed to identify appellant in the courtroom and stated, "They asked do you see the person who did this and she didn't. But the State could have come over here---" Appellee objected, the trial court told defense trial counsel "that's improper and you know that's improper," and instructed counsel to move on. Neither party requested a bench conference out of the jury's presence to flesh out the grounds for the objection, appellant's response thereto, or the basis of the trial court's ruling.

{¶50} It is not evident to us what defense trial counsel was attempting to argue, and appellant has not enlightened us in his brief, arguing only that he was prevented from making a "complete argument" as to the element of identity. Brief, 11.

{¶51} It is well-settled that counsel is accorded wide latitude in opening statement; however, counsel is not permitted to make statements of law or fact that are obviously erroneous. *Burton v. Dutiel*, 5th Dist. No. 14-CA-00024, 2015-Ohio-4134, 43 N.E.3d 874, ¶ 48, citing *Silver v. Jewish Home of Cincinnati*, 190 Ohio App.3d 549, 2010-Ohio-5314, 943 N.E.2d 577 (12th Dist.Warren). This same standard is applied to closing argument. *Pang v. Minch,* 53 Ohio St.3d 186, 559 N.E.2d 1313 (1990). Remarks that are not

supported or warranted by the evidence and that are calculated to arouse passion or prejudice may constitute prejudicial error. *Id.*

{¶52} A trial court's ruling with respect to opening and closing statements will not be reversed on appeal absent an abuse of discretion. *Stockmeister Enterprises, Inc. v. City of Lancaster*, 5th Dist. Licking No. 18-CA-32, 2019-Ohio-1338, ¶ 16, citing *Pang v. Minch,* supra, paragraph three of the syllabus. In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

{¶53} Appellant does not argue the trial court abused its discretion and we find no indication it did so, especially when we are left in the dark as to what argument appellant was prevented from making. Appellant further argues the trial court denigrated defense trial counsel, but upon our review of the trial court's comments in their entirety, we disagree.

{¶54} Appellant's third assignment of error is overruled.

**CONCLUSION**

{¶55} Appellant's three assignments of error are overruled and the judgment of the Stark County Court of Common Pleas is affirmed.


By:  Delaney, P.J.,

Hoffman, J. and

King, J., concur.