[Cite as *State v. Redmond*, 2026-Ohio-1464.]

IN THE OHIO COURT OF APPEALS
FIFTH APPELLATE DISTRICT
STARK COUNTY, OHIO

| STATE OF OHIO | Case No. 2025CA00107 |
| | |
| Plaintiff - Appellee | <u>Opinion and Judgment Entry</u> |
| | |
| -vs- | Appeal from the Stark County Court of Common Pleas, Case No. 2025-CR-0888 |
| | |
| TONYA REDMOND | Judgment: Affirmed |
| | |
| Defendant - Appellant | Date of Judgment Entry: April 22, 2026 |

**BEFORE:** Andrew J. King; William B. Hoffman; Kevin W. Popham, Judges

**APPEARANCES:** Kyle L. Stone, Stark County Prosecuting Attorney, Christopher A. Piekarski, Assistant Prosecuting Attorney for Plaintiff-Appellee; George Urban, for Defendant-Appellant.

*Hoffman, J.*

{¶1} Defendant-appellant Tonya Redmond appeals the judgment entered by the Stark County Common Pleas Court convicting her following jury trial of felonious assault (R.C. 2903.11(A)(2)) with a firearm specification (R.C. 2941.145(A)), and sentencing her to an aggregate term of incarceration of seven to nine years. Plaintiff-appellee is the State of Ohio.

STATEMENT OF THE FACTS AND CASE

{¶2} The victim was sixty-two years old, and lived in a large house in Canton, Ohio. While at a hardware store several years ago, he met Appellant. Upon learning Appellant was homeless, he invited Appellant to come and stay in one of his extra rooms. Appellant lived with the victim for several years without paying rent. However, she sometimes helped the victim with cleaning, household chores, and cooking.

{¶3} On April 26, 2025, Appellant and the victim spent the day partying at the kitchen table. They drank beer and Fireball [whiskey], and smoked marijuana. In the afternoon, the victim and Appellant argued over the volume of music. Something "fired [Appellant] up," causing her to get up from the table. Tr. (I) 209. The victim had hearing loss in his left ear, but he heard Appellant mumble something he could not understand. When he looked toward the victim, he saw a gun aimed at him, then heard a "pow." *Id*. Appellant shot the victim on the left side of his face, causing extensive damage to his jaw.

{¶4} The victim called 911 himself to report the shooting. The victim feared for his life because his jaw was falling off in his hand. The victim passed out while speaking with the emergency dispatcher.

{¶5} Canton Police Officer Michael Brown was one of several officers who responded to the call. Officer Brown was prepared to force entry into the home, but as he opened the side storm door, Appellant opened the main, inner door. She refused the officer's verbal command to come outside, and so the officer physically pulled her outside and entered the home. The victim told the officer Appellant's gun was probably in her back pocket. The officer found a gun in Appellant's right rear pocket, and the gun was later identified as the gun used to shoot the victim.

{¶6} Appellant was interviewed by police. She told police the victim instigates things and picks on her. She told police the victim went to the back door to urinate outside, and she shot him. She stated she was tired of being put down. She told police during a fight a few weeks earlier, the victim became angry while they were watching television because Appellant always changes the channel during commercials. Appellant stated the victim called her nasty names, and for a whole week he put her down every day. When asked if she shot the victim, Appellant initially told police she wanted to shoot herself. She then stated if they find the shell casing, they'll get their answer. Appellant told police she wanted to die and go to heaven with her son.

{¶7} Appellant was indicted by the Stark County Grand Jury with one count of felonious assault with a firearm specification. The case proceeded to jury trial in the Stark County Common Pleas Court.

{¶8} Appellant testified at trial. She admitted she owned and carried the weapon identified as the gun which was used to shoot the victim. However, Appellant testified at trial she shot the victim accidentally. She testified she could not recall arguing with the victim over the music volume. She testified the victim was urinating outside from the back door while she was fumbling around in the living room to turn on the light. She had her gun in her hand while trying to turn on the light switch, and heard the gun go off. She was unsure why the gun was in her hand, because she always keeps the gun in her right rear pocket. The only reason she could think of for having the gun in her hand was she was going to use the gun to turn the light switch on before sitting down in a living room chair. She admitted the empty cartridge case was found at the top of the steps in the kitchen and not in the living room, and agreed the photographs would establish the gun

was not fired in the living room. However, from her memory, she believed she fired the gun from the living room despite the contradictory photographs.

{¶9} The jury found Appellant guilty as charged in the indictment. The trial court convicted her upon the jury's verdict. The trial court sentenced Appellant to a term of incarceration of four to six years for felonious assault and three years of incarceration for the firearm specification, to be served consecutively, for an aggregate prison term of seven to nine years. It is from the July 30, 2025, judgment of the trial court Appellant prosecutes her appeal, assigning as error:

I. THE TRIAL COURT ABUSED ITS DISCRETION BY LIMITING THE DEFENDANT'S USE OF THE DEFINITION OF "KNOWINGLY" DURING OPENING STATEMENTS THEREBY PREVENTING HER FROM PRESENTING HER THEORY OF THE CASE TO THE JURY.

II. THE TRIAL COURT ABUSED ITS DISCRETION BY ALTERING THE LEGAL EFFECT OF THE ACCIDENT DEFENSE BASED ON THE COURT'S DISAGREEMENT WITH SETTLED LAW.

III. THE VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE BECAUSE THE EVIDENCE ADDUCED AT TRIAL OVERWHELMINGLY SUPPORTED THAT THE INCIDENT WAS AN ACCIDENT, NEGATING THE REQUISITE MENS REA FOR FELONIOUS ASSAULT.

I.

{¶10} In her first assignment of error, Appellant argues the trial court erred in limiting her use of the definition of "knowingly" during her opening statement. We disagree.

{¶11} During opening statement, counsel for Appellant placed the written definition of "knowingly" before the jury on a document screen. The document was removed from the screen, and a bench conference ensued. The trial court explained to defense counsel the definition, which was taken from a draft of the jury instructions, was not appropriate to display because the instructions were not finalized. The trial court told defense counsel she could discuss what the evidence would show as to the requisite mens rea of "knowingly," but could not display the written definition.

{¶12} A trial court's ruling with respect to opening statement will not be reversed absent an abuse of discretion. *State v. Edwards,* 2024-Ohio-2228, ¶ 52 (5th Dist.). An abuse of discretion implies the trial court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore,* 5 Ohio St. 3d 217, 219 (1983).

{¶13} Although the trial court did not allow counsel to display the written definition of "knowingly" on the document screen, the trial court allowed counsel to discuss the requisite mental state as it related to the evidence in the case. Counsel argued in opening statement:

> What we're focused on is whether or not Tonya intentionally, knowingly shot [the victim]. It's our intention [sic] that it was an accident. It's our intention [sic] that both people drinking, the drug use, everybody at

the house had a gun, that it was an accidental shooting. Did it cause damage? Absolutely.

**{¶14}** Tr. (I) 200-01.

**{¶15}** Appellant was not prevented from presenting her theory of the case to the jury by the trial court's decision she could not display the written definition of "knowingly" on the document screen. We find the trial court did not abuse its discretion in limiting opening statement in the manner it did.

**{¶16}** The first assignment of error is overruled.

II.

**{¶17}** In her second assignment of error, Appellant argues the trial court erred in failing to instruct the jury evidence of accident could negate knowledge. We agree, but find the error harmless in the instant case.

**{¶18}** Before the start of voir dire, the trial court briefly discussed jury instructions with the parties. The trial court noted the parties had been emailing with the court about jury instructions, and the court received Appellant's request "with regard to an instruction about accident or mistake pursuant to a comment that's in OJI," as well as the State's objection. Tr. (I) 6. The court stated it had engaged in its own research, looked at the "cases that were there," and tried to find something "local." *Id.* The trial court discussed the inapplicability of the mistake of fact defense in the instant case. Defense counsel clarified the issue was accident, and while most of the case law she found related to "purposely" as a mental state, there is case law specifically saying accident can also be used to negate "knowingly." Tr. (I) 9.

**{¶19}** After the presentation of the evidence, the trial court discussed jury instructions with the attorneys. The trial court noted she did some research concerning instructions. As to the request for an instruction on accident, the trial court noted there was evidence Appellant was fed up and shot the victim, evidence Appellant did not remember the shooting, and evidence she was trying to turn on the light and the gun went off. The trial court took more time to decide whether to give an accident instruction, and noted after she made her decision, she would give the parties an opportunity to note objections on the record before loading the instructions on the Kindles for the jury.

**{¶20}** After a brief recess, the trial court informed the parties she would give an accident instruction. The trial court read the instruction to the parties, which included, "Such evidence, if believed, may be considered when evaluating the element of knowingly." Tr. (II) 388. Counsel for Appellant asked, "for the record," that the language be changed to read, "Such evidence, if believed, may be considered to negate the element of 'knowingly' instead of 'evaluating'." Tr. (II) 389. The court responded:

> I spent a lot of time choosing the words that I did. I think that it doesn't negate it, it goes to it and can be considered. I disagree with the "negate," but you can argue that to them.

**{¶21}** Tr. (II) 389-90.

**{¶22}** "It is prejudicial error in a criminal case to refuse to administer a requested charge which is pertinent to the case, states the law correctly, and is not covered by the general charge." *State v. Scott*, 26 Ohio St.3d 92, 101 (1986). As this Court has noted, the comment under OJI 417.11, which provides the definition of the mental state

of "knowingly," states, "Evidence of mistake, accident, lack of information, or other innocent reason can negate the existence of knowledge, but do not constitute affirmative defenses." *State v. Hawks*, 2025-Ohio-23, ¶ 22. In the instant case, the instruction language requested by Appellant was pertinent to the case, as Appellant testified the gun accidentally went off when she used it to turn on a light switch. The requested change to the instruction stated the law correctly and was not covered by the general charge. We therefore find the trial court erred in failing to instruct the jury accident can negate the mental state of "knowingly" upon Appellant's request.

{¶23} The State argues Appellant failed to preserve the error, and therefore plain error should apply. We disagree. Crim. R. 30(A) provides:

> **(A) Instructions; Error; Record.** At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. Copies shall be furnished to all other parties at the time of making the requests. The court shall inform counsel of its proposed action on the requests prior to counsel's arguments to the jury and shall give the jury complete instructions after the arguments are completed. The court also may give some or all of its instructions to the jury prior to counsel's arguments. The court shall reduce its final instructions to writing or make an audio, electronic, or other recording of those instructions, provide at least one written copy or recording of those instructions to the jury for use during deliberations, and preserve those instructions for the record.

On appeal, a party may not assign as error the giving or the failure to give any instructions unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection. Opportunity shall be given to make the objection out of the hearing of the jury.

{¶24} The Ohio Supreme Court has recognized an exception to the requirement the party must object before the jury retires:

Therefore, in a criminal case, where the record affirmatively shows that a trial court has been fully apprised of the correct law governing a material issue in dispute, and the requesting party has been unsuccessful in obtaining the inclusion of that law in the trial court's charge to the jury, such party does not waive his objections to the court's charge by failing to formally object thereto. Crim. R. 30(A).

{¶25} *State v. Wolons*, 44 Ohio St.3d 64, 67 (1989).

{¶26} The State argues Appellant requested a slight modification in the instruction language, but did not renew her request for the charge, did not submit written instructions, failed to object, and failed to present the trial court with argument or supporting law. The State cites to this Court's decision in *State v. Remillard*, 2019-Ohio-3545 (5th Dist.), for the proposition we must find plain error to reverse where counsel does not state the nature and grounds of the request with specificity. However, *Remillard* was a plurality opinion of this Court. In *Remillard*, defense counsel asked the record to

reflect an instruction on accident had been requested and refused by the trial court. The lead opinion of this Court found this statement was insufficient to preserve error, and thus applied the plain error standard of review. *Id*. at ¶ 66. However, the other two members of the panel, in separate concurring opinions, found the error was preserved, and plain error did not apply. *Id*. at ¶ 89 (Hoffman, J., concurring) and ¶ 92 (Wise, J., concurring). Therefore, the majority of the *Remillard* Court found plain error did not apply.

{¶27} In the instant case, although the emails discussing jury instructions are not a part of the record, it is apparent from the trial court's comments that discussions regarding an accident instruction began prior to trial, and such discussions included the footnote which sets forth the requested language concerning accident negating knowledge. Although a written request for the instruction is not a part of the record and it is unclear what case law was provided to the court, the trial court's statement on the record concerning her deliberate choice of the language "evaluate" rather than "negate," coupled with her statements regarding doing her own research, indicate the issue was sufficiently raised to the trial court to invoke her full and careful consideration of the issue. "[I] f a party makes his position sufficiently clear to give the court an opportunity to correct a mistake or defect, then the rationale for formally objecting is no longer present." *Wolons*, 44 Ohio St. 3d at 67. In the instant case, it is apparent from the record the trial court had a full opportunity to correct the mistake, and therefore, we find plain error does not apply.

{¶28} Erroneous jury instructions ordinarily do not constitute structural error and are subject to harmless-error analysis. *Neder v. United States*, 527 U.S. 1 (1999); *Chapman v. California*, 386 U.S. 18 (1967). Pursuant to Crim.R. 52(A), the State bears

the burden of demonstrating any preserved error did not affect the outcome of the trial. *State v. Jones,* 2020-Ohio-3051, ¶¶ 17-18. An error is harmless when it is clear beyond a reasonable doubt it did not contribute to the verdict. *State v. Rahman*, 23 Ohio St.3d 146, 151 (1986).

**{¶29}** In the instant case, the trial court defined "knowingly" as follows:

Knowingly: A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. Because you cannot look into the mind of another, knowledge is determined from all the facts and circumstances in evidence. You will determine from these facts and circumstances whether there existed at the time in the mind of the Defendant an awareness of the probability that physical harm to [the victim] would occur.

Evidence was presented regarding accident. An accident is an unfortunate event occurring casually or by chance. Such evidence, if believed, may be considered when evaluating the element of knowingly.

**{¶30}** Tr. (II) 404.

**{¶31}** In closing argument, counsel for Appellant argued:

Does she say she shot him? Yeah, because her finger hit that trigger and she shot him. She is the cause of his damages. That doesn't mean it

was knowingly. It doesn't mean that she meant to do it. It can mean and it does mean, in this instance, that it was an accident. And when it's an accident, that affects how you evaluate knowingly. It could negate it…

It's not like she didn't say she didn't hurt him with a bullet from her gun. That's not the question today.

The question is: Did she mean to do it? The question is: Did she knowingly do it?

**{¶32}** Tr. (II) 424-25.

**{¶33}** Considering all of the evidence regarding the circumstances surrounding the shooting, had the jury believed Appellant accidentally shot the victim while turning on the light switch with the gun, and considering the trial court's instructions concerning using the information to "evaluate knowingly," along with counsel's argument concerning accident "negating knowledge," we conclude there is no reasonable probability the jury would have acquitted Appellant. We therefore find the instruction did not contribute to the verdict, and the error was harmless.

**{¶34}** The second assignment of error is overruled.

III.

**{¶35}** In her third assignment of error, Appellant argues because the evidence of accident was overwhelming, the judgment convicting her of felonious assault is against the manifest weight of the evidence. She argues based on her own testimony and the victim's statement to police he didn't believe Appellant understood what she had done, the jury lost its way in finding her guilty. We disagree.

**{¶36}** The term "manifest weight of the evidence" relates to persuasion. *Eastley v. Volkman,* 2012-Ohio-2179, ¶ 19. It concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other." (Emphasis deleted.) *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), *superseded by constitutional amendment on other grounds as stated in State v. Smith,* 80 Ohio St.3d 89, 102 n.4 (1997); *State v. Martin*, 2022-Ohio-4175, ¶ 26.

**{¶37}** In determining whether a judgment is against the manifest weight of the evidence, an appellate court reviews the entire record, "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins*, 78 Ohio St.3d at 387, *quoting State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). Sitting as the "thirteenth juror," the court of appeals considers whether the evidence should be believed and may overturn a verdict if it disagrees with the trier of fact's conclusion. *Id*.

**{¶38}** When conducting a manifest weight review, the question is whether the jury clearly lost its way in resolving conflicts, resulting in a manifest miscarriage of justice, even if the evidence is legally sufficient. *Thompkins*, 78 Ohio St.3d at 387; *State v. Issa,* 93 Ohio St.3d 49, 67 (2001). Appellate courts have traditionally presumed the jury's assessment is correct, given its ability to observe witnesses' demeanor, gestures, and tone, all critical factors in evaluating credibility. *Eastley*, 2012-Ohio-2179, at ¶ 21; *Seasons Coal Co., Inc. v. Cleveland,* 10 Ohio St.3d 77, 80 (1984).

**{¶39}** A manifest-weight claim succeeds only in "the exceptional case in which the evidence weighs heavily against the conviction." (Internal quotations omitted.)

*Thompkins*, 78 Ohio St.3d at 387. To reverse a conviction on manifest-weight grounds, all three judges on the appellate panel must concur. Ohio Const., Art. IV, § 3(B)(3); *Bryan-Wollman v. Domonko,* 2007-Ohio-4918, ¶¶ 2-4, *citing Thompkins*, syllabus ¶ 4.

{¶40}Appellant did not tell police she accidentally shot the victim while using her gun to turn on a light switch in the living room. Rather, she detailed an ongoing set of arguments with the victim, telling police he was constantly picking on her and putting her down. Such revelation suggests a motive for a knowing act of shooting rather than an accidental shooting. Appellant admitted at trial the photographs showing where the shell casing was found did not support her claim she accidentally shot the gun from the living room. The victim testified after arguing about the volume of music, he turned and saw the gun aimed at him. We find the jury did not lose its way in finding Appellant's testimony she accidentally discharged the gun turning on a light switch to not be credible, and the verdict is not against the manifest weight of the evidence.

{¶41} The third assignment of error is overruled.

{¶42} For the reasons stated in our accompanying Opinion, the judgment of the Stark County Court of Common Pleas is affirmed.

{¶43} Costs to Appellant.

By: Hoffman, J.

King, P.J. and

Popham, J. concur.